ROLLIN ROBINSON *v.* ENOCH CONE.

In order to sustain an action for the negligence of the defendant, whereby the plaintiff is alleged to have sustained injury, it must appear, that the injury did not occur from any want of ordinary care on the part of the plaintiff, either in whole, or in part.

But all that is to be required of the plaintiff, in such case, is, that he exercise care and prudence equal to his capacity.

Although a child of tender years may be in the highway through the fault, or negligence, of his parents, and so be improperly there, yet if he be injured through the negligence of the defendant, he is not precluded from his redress. If the defendant know, that such a person is in the highway, he is bound to a

proportionate degree of watchfulness,—to the utmost circumspection,—and what would be but ordinary neglect, in regard to what he supposed a person of full age and capacity, would be gross neglect as to a child, or one known to be incapable of escaping danger.[*]

TRESPASS for an assault and battery. Plea, the general issue, and trial by jury, September Term, 1847,—HALL, J., presiding.

On trial the plaintiff gave evidence tending to prove, that at the time of the injury complained of he was about three years and nine months of age; that his father resided at the summit of a hill, about one fourth of a mile northerly from the centre of the village in Pawlet; that during the winter of 1844-5 he attended a school, which was kept near the centre of the village, southerly from the foot of the hill, and that in going to and returning from school he necessarily passed along the public highway leading down the hill; that on the tenth day of February, 1845, a short time before one o'clock in the afternoon, he was sliding down the hill, in the travelled path of the highway, very near to the west side, on a small sled, lying on his breast upon the sled, with his feet and legs projecting behind the sled, and his left leg hanging over the left side of the sled, and with his head inclined towards the western bank; that while he was thus situated, and when near the lower end of the hill, the defendant came upon the brow of the hill from the north, with a load of bark, drawn by two horses on a traverse sleigh, driving with great force down the hill upon a smart trot, on the west side of the road; that the plaintiff was then on the west side of the road, two or three feet from the western bank,—which rose abruptly from the surface of the travelled part of the road,—attempting to push himself and his sled, on which he was lying, toward the outward and westerly side of the travelled path; that the travelled path was there twenty two feet and

---

[*] See *Birge* v. *Gardiner*, 19 Conn. 507, where the defendant had set up a gate upon his own land, by the side of a lane, through which the plaintiff, a child between six and seven years of age, with other children in the same neighborhood, was accustomed to pass, and the plaintiff, in passing along the lane, without license from any one, put his hands on the gate and shook it, in consequence of which it fell upon him and broke his leg, and the defendant was held liable for the injury, under instructions to the jury very similar to those given in the case of *Robinson* v. *Cone*, above reported.

some inches wide; and that when the plaintiff was within two or three feet of the bank, still lying on his breast, with his head towards the westerly side of the road, his left leg, which hung over the sled, was caught by the right runner of the rear traverse of the defendant's sleigh, and so broken and lacerated as to require amputation, and that his shoulder was dislocated and other injuries received.

The plaintiff also gave evidence tending to prove, that the length of the road upon the hill was 410 feet, and its ascent, in the same distance, about 433 inches; that there was sufficient room for the defendant to have passed the plaintiff upon the easterly side, with ordinary care; and that the road, where the plaintiff was injured, was travelled over the whole surface from the western bank to the eastern side and was smooth from use.

The plaintiff also proved, that the defendant said, after the injury, that as he came over the brow of the hill he saw something in the road, which he supposed was a dog; that he was coming down rather on the west side of the road, and when he saw it was a boy, he thought he would have wit enough to get out of the way, until he came near; that his horses were well broke, and he held them hard, so that they did not raise their feet from the ground, but they could not hold the load, so as to stop it suddenly; that as soon as he saw, that the horses could not hold the load, and that he must pass over the boy, if he went directly forward, he turned to the east, and the horses and the forward traverse passed the boy without touching him, but the rear traverse did not track after the forward one and ran over him; and that the hill was always swarming with children, and he never drove into the village, without finding the hill alive with them. The plaintiff also gave evidence tending to show, that the place, where the defendant said he was, when he first saw the plaintiff, was distant from the plaintiff about ten rods, and that the surface of the road was depressed in the middle not more than four inches.

The defendant gave evidence tending to prove, that the plaintiff, with other boys, was, at the time of the injury, sliding on the hill for amusement, and that the other boys were at the foot of the hill, drawing back their sleds; that the road upon the hill was narrow and very slippery and icy from the travel on it and its use by the

boys for sliding; that he resided three or four miles distant, and had no knowledge of the size and age of the boy, until near him; that the boy was near the centre of the travelled path, which was at that place from eight to twelve inches lowest in the middle; that when he was three or four rods from the boy, and at the earliest moment he had reason to apprehend there was danger, that the boy would not get out of the road, he held his horses hard, but seeing, from the icy and slippery state of the hill, that the horses could not seasonably check the impulse of the load, he turned them suddenly to the east side of the road, and approached it as near as it was possible to do, without going over the bank, and by that means the horses and forward traverse passed the boy safely, but that, from the inclination of the road at that place towards the centre, the after traverse slipped towards the centre of the road, and thereby struck the plaintiff's leg; that the surface of the hill was undulating; and that he was on a steep point of the hill, when he discovered the boy, trotting slowly, and driving at the usual and ordinary rate of speed, at which prudent men drive with such a load at such a place.

The defendant requested the court to charge the jury,—1. That if the injury arose from any neglect, or want of care, on the part of the plaintiff, he cannot recover. 2. That if the plaintiff was in the exercise of ordinary care, and the injury was the result of unavoidable accident, the plaintiff cannot recover. 3. That if the plaintiff was of so tender an age, as not to be capable of observing and avoiding travellers, it was gross negligence on the part of his parents to permit him to be in the street, and no recovery can be had, unless the defendant was grossly negligent, or the injury was voluntary on the part of the defendant. 4. That the law of the road requires, that those on foot should yield the road to teams; and that the supposition is, that they will do so. 5. That persons, who use the highway for games and amusements, not connected with travelling, do so at their peril, and cannot call on a traveller for damages for an injury, unless the traveller were grossly negligent. 6. That as the plaintiff was bound to yield the road to the defendant's team, and did not, he must suffer the consequences, even if he were not in fault, (as if blind, or deaf,) unless the injury resulted from the gross neglect of the defendant. 7. That the care and diligence, which the defendant was bound to exercise, was the ordinary care

and diligence used by persons of common prudence in like circum-
stances. 8. That the defendant, on discovering that the plaintiff
was not about to get out of the road, was not bound to adopt the
best possible means of avoiding the injury, but is excusable, if he
acted with ordinary care and prudence under the circumstances.
9. That gross negligence is more than mere inattention, and is such
a degree of rashness, or wantonness, as evinces a willingness, that
the act complained of should be done.

But the court charged the jury, that the law of the road, applica-
ble to injuries sustained by travellers coming in contact with each
other, is, that both should be held to the exercise of common care
and prudence in the use of the road; that if both are equally negli-
gent, no recovery can be had for such injury;—that the defendant,
in this case, would not be liable, if the injury to the plaintiff hap-
pened, while the defendant was in the exercise of ordinary care and
prudence; and farther, that if the defendant were not in the exer-
cise of ordinary care and prudence, he would not be liable, provided
the injury would not have happened, but for the want of ordinary
care and prudence on the part of the plaintiff;—that ordinary care
and prudence was such, as would commonly be used by per-
sons in the situation and under the circumstances, in which the
parties were, in this case, and that whether they were in the exer-
cise of such care and prudence was a question for the jury, to be
ascertained and determined by them from the evidence;—that they
should first inquire, whether the plaintiff was in the exercise of ordi-
nary care and prudence, at the time of the injury, and if they found
he was not, and that the injury would not have happened, but for
the want of such care and prudence on his part, it would be their
duty to render their verdict for the defendant, whether he was in
the use of such care and prudence, or not;—that in determining the
amount of care and prudence to be required of the plaintiff, they
need not measure it by the rule, that would be applicable to an
adult, but might consider, that he was a child, about four years of
age, from whom a less degree of care and prudence might be ex-
pected; that if they believed, the plaintiff acted on that occasion, as
a child of his age and capacity would be expected to act, they might
consider his want of the care and prudence of an adult as no objec-
tion to his recovery;—that it was claimed on the part of the defend-

ant, that the court should charge them, that if the boy was of so tender an age, as not to be capable of discovering and avoiding travellers, it was gross negligence in the parents to permit him to be in the street, and that he could not recover, unless the defendant was guilty of gross negligence, or the injury was voluntary on the part of the defendant,—and that the court acceded to the principle of law, as claimed by the defendant; but that it was a question for the jury, how far the principle of law was applicable to the facts of this case; that if the boy were of so tender years, as to be absolutely incapable of observing and avoiding travellers, it might be gross negligence in the parents to permit him to be in the street,—and in such case the defendant would not be liable, unless he were also guilty of gross negligence; but that if the plaintiff were an active boy, of sufficient age to attend school, and was attending school, and if children of his age and capacity would ordinarily be allowed and expected to attend school and be in the street, as he was, then there would be no gross negligence on the part of the parents, though the boy might not have the prudence and capacity of a man, to avoid danger, and the defendant could derive no advantage from the principle of law before stated.

The jury were farther instructed, that if, under the directions already given, they should not find a want of care and prudence on the part of the plaintiff, it would then be their duty, to inquire into the alleged negligence of the defendant;—that the defendant, in driving his team down the hill, should be held to the exercise of common, or ordinary, care and prudence,—such care and prudence, as a man of common prudence would be expected to exercise, under the circumstances of the case;—that in determining the question, whether the defendant had been guilty of negligence, or not, they should take into consideration the size and character of the defendant's load, the condition of the road, the steepness of the hill, the speed of the driving, the usual amount of travel upon the road, and the fact, especially, if they should find it was known to the defendant, that the hill was commonly used by boys for sliding; that in such a case more care would be required, than in a place less frequented, and where the person driving would not expect to meet, or overtake, any one;—that if, under the directions before given, they should be of opinion, that the defendant was in the exercise of such

common care and prudence, as, from all the circumstances, ought reasonably to be required of him, and the injury was unavoidable, they ought to excuse him from liability;—but that if they found, that he was driving in a careless and negligent manner, without the exercise of common care and prudence, and that the injury occurred by reason of his carelessness and neglect, their verdict should be against him.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*C. B. Harrington* for defendant.

In actions of this kind the plaintiff cannot recover, if his own negligence, or want of ordinary care and prudence, have in any manner contributed to the injury, of which he complains. *Bridge v. Grand Junction Railway Co.,* 3 M. & W. 244. *Pluckwell v. Wilson,* 5 C. & P. 375, [24 E. C. L. 368.] *Luxford v. Large,* 5 C. & P. 421, [24 E. C. L. 391.] *Lack v. Seward,* 4 C. & P. 106, [19 E. C. L. 298.] *Washburn v. Tracy,* 2 D. Ch. 128. *Rathbun v. Payne,* 19 Wend. 399. *Butterfield v. Forrester,* 11 East 60. *Barnes v. Cole et al.,* 21 Wend. 188. 2 Hall 151. *Brown v. Maxwell,* 6 Hill 592. And when a party, by his own want of common care and prudence, or by his gross negligence, brings an injury upon himself, he cannot claim to recover upon the ground, that he has less capacity, either physical, or intellectual, than the party from whom he seeks to recover. An infant is liable for torts committed by him; and his want of capacity to understand the consequences of his acts was never considered a legal justification for his trespasses, or other wrongful acts, except in criminal cases. *Humphrey v. Douglass,* 10 Vt. 71. *Sikes v. Johnson,* 16 Mass. 389. *Fitts v. Hall,* 9 N. H. 441. *Homer v. Thwing,* 3 Pick. 492. 2 Kent 241. *Bullock v. Babcock,* 3 Wend. 391. The case of *Lynch v. Nurdin,* 1 Ad. & E., N. S., 28, [41 E. C. L. 422,] is not analogous in principle. It was decided upon the ground, that the defendant was guilty of the "*most blameable carelessness*" in leaving his horse loose and unattended in the street of a populous town, or, in other words, that the defendant was guilty of *gross negligence.* Lord DENMAN bases his opinion upon the analogy between that case and the case of *Illidge v. Goodwin,* 5 C. & P. 190, [24 E. C. L. 272.] *Dixon*

v. *Bell,* 5 M. & S. 198. In the case of *Hartfield* v. *Roper,* 21 Wend. 615, the whole question is discussed by COWEN, J., and the doctrine established, that when a child, even of such tender years as not to be capable of using sufficient discretion to avoid danger, is permitted to be unattended in the highway, and is there injured by a traveller, he cannot recover, either in an action of trespass, or case, unless the defendant have been guilty of *gross negligence.* The true rule is, that the parent, or guardian, is responsible for the exercise of ordinary care and prudence, until the infant arrives at years of discretion, sufficient to enable him to exercise ordinary care and prudence for himself; and at the point, when the parent's responsibility ceases, then commences the responsibility of the infant. *Brown* v. *Maxwell,* 6 Hill 592.

*D. Roberts, Jr.,* for plaintiff.

Ordinary care was all, that could be required of the plaintiff, to avoid the injury which happened in this case. *Washburn* v. *Tracy,* 2 D. Ch. 128. Although the plaintiff may himself have been guilty of negligence, yet unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, he is entitled to recover. Broome's Legal Max. 169, 170. PARKE, B., in *Bridge* v. *Gr. Junc. Rail. Co.,* 3 M. & W. 248,—recognized in *Davies* v. *Mann,* 10 M. & W. 546. *Marriott* v. *Stanley,* 1 Scott's N. R. 392; *S. C.,* 1 M. & G. 568, [39 E. C. L. 559.] *Lynch* v. *Nurdin,* 1 Ad. & El., N. S., 28, [41 E. C. L. 422.] 6 Cow. 191. 2 Pick. 621. 12 Pick. 177. The court below recognized the doctrine. of the case of *Hartfield* v. *Roper,* 21 Wend. 615, that the negligence, if any, of the plaintiff's parents is to be regarded as his own. The jury have found, that the plaintiff was an active boy, of sufficient age to attend school, and was attending school, and that children of his age and capacity would ordinarily be allowed and expected to attend school, and be in the street, as he was. There was, then, no want of ordinary care on the part of the parents. Even a paralytic has a right to walk in the carriage way, even at night, though there be a foot path. *Boss* v. *Litton,* 5 C. & P. 407, [24 E. C. L. 384.]

Neither was there any such want of care on the part of the child, as will preclude him from a recovery. The jury have found, that

he acted with at least that degree of care, which would be expected from a child of his age and capacity. To require of the plaintiff a greater degree of caution, than was suited .to his age, and at the same time greater than he possessed, would be to require an impossibility. *Lex non cogit ad impossibilia.* Negligence is a fault; but it cannot be predicated of him, who acts with as great a degree of care, as he may be able, and as could be expected from a person of his age, under the same circumstances. *Lex spectat naturæ ordinem.*

The defendant was bound to the exercise of ordinary care in his driving. The charge of the court required that, and no more; but what is ordinary care in a particular case is to be determined upon reference to all the attendant circumstances. The jury found, that the defendant did not exercise that ordinary care. The law, or *usage, of the* road is no criterion of negligence. *Wayde* v. *Carr*, 2 D. & R. 255, [16 E. C. L. 84.] Ld. ELLENBOROUGH, in *Clay* v. *Wood*, 5 Esp. R. 44.

The opinion of the court was delivered by

REDFIELD, J. The general principles of law, applicable to the subject of actions for negligence, are well settled, no doubt, and familiar to the profession. They are, perhaps, sufficiently well expressed by Ld. ELLENBOROUGH, Ch. J., in *Butterfield* v. *Forrester*, 11 East 60: " One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action,—an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it, on the part of the plaintiff." This is substantially the *formula*, which, since that time, has been followed, in charging juries in road cases; and, as a general rule, it is unobjectionable.

But in its application to the multiplicity of cases which occur, and the almost endless variety of incidents attending injuries of this character, it is not uncommon, that perplexing doubts will spring up, which this general *formula* is wholly insufficient to solve. Hence, this case has been somewhat questioned, perhaps it may be said, criticised certainly, in the later cases, both English and American. See *Marriott* v. *Stanley*, 39 E. C. L. 359, 361, n. *a*. But the remarks of the learned judge, as applicable to the case before

him, (and we have, perhaps, no right to give them any other application,) are most unquestionably sound. The conduct of both the parties, in that case, was certainly very singular, and the case hardly a precedent for any other. But the principle stated by the learned judge is of universal application to similar cases. In order to sustain the action on the case for negligence of the defendant, it must appear, that the injury did not occur from any want of ordinary care on the part of the plaintiff, either in whole, or in part. In other words, if ordinary care on the part of the plaintiff would have enabled him to escape the consequences of the defendant's negligence, he has no ground of complaint. He may be said, in such a case, to have been himself the cause of any injury, which he may have sustained under such circumstances. Hence we notice, in the trial of this class of cases by the English judges, at *nisi prius*, the question is stated in that form, and the jury are directed first to say, whether the injury occurred from the misconduct of the plaintiff. If so, the defendant has a verdict, of course. If not, the jury are, where any such doubt arises, required to say, whether the injury occurred from inevitable accident, or the negligence or misconduct of the defendant. *Cotterill et ux.* v. *Starkey*, 8 C. & P. 691, [34 E. C. L. 587.] And the rule holds, that the plaintiff cannot recover, if *his* want of ordinary care *in part* contributed to produce or to *enhance* the injury. *Marriott* v. *Stanley*, above cited. The English books are full of cases to this point. So, too, where the proof leaves the case merely doubtful, whether the injury is fairly attributable to the defendant's wrong, or to that of the plaintiff, the case is not made out.

The case of *Bridge* v. *Grand Junction Railway Co.*, 3 M. & W. 244, seems to us not to have essentially qualified the rule laid down by Ld. ELLENBOROUGH in *Butterfield* v. *Forrester*. It is, indeed, in this case expressly decided, that a plea, alleging that the injury was the joint result of carelessness in the agents of both railways, in managing each of the trains which came in collision, is no bar to the action. Lord ABINGER, it is to be observed, assigns no reason, why he considers the plea bad, *in substance*. So, too, the other barons assign no reasons, except PARKE, B., who does say, "That unless he (the plaintiff) might, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, he is

entitled to recover." In *Davies* v. *Mann*, 10 M. & W. 545, the same court expressly decide, that the fact, that the plaintiff was somewhat in fault, is not sufficient to preclude a recovery on his part, and reiterates the same declaration by PARKE, B., that " The negligence, which is to preclude a plaintiff from recovering in an action of this nature, must be such as that he could, by ordinary care, have avoided the consequences of the defendant's negligence."

These cases seem to me correctly decided; but the language of PARKE, B., may be, perhaps, liable to some degree of criticism. I should hesitate to say, that if it appeared, that the want of ordinary care on the part of the plaintiff, *at the very time of the injury*, contributed either to produce or to enhance the injury, he could recover ; because it seems to me, that is equivalent to saying, that the plaintiff, by the exercise of ordinary care at the time, could have escaped the injury. The defect, *in substance*, in the plea in *Bridge* v. *Grand Junction Railway Co.*, seems to be, that there was no allegation of any misconduct on the part of the *plaintiff* or *his agents ;* for *non constat*, that the engineers and conductors of the train, on which the plaintiff was conveyed, were so situated in regard to the plaintiff, that *he* was to be affected by *their* misconduct. No doubt, if the collision occurred altogether through the misconduct of the conductors of the train, upon which the plaintiff was conveyed, the defendants are excused, although they might have, at the time, been guilty of some degree of negligence, which did not contribute to the injury. But I am not prepared to say, that in the ordinary case of a collision, on a railway, by the misconduct of the agents and servants of both roads, the passengers are compelled to resort to that company, upon whose railway they are conveyed. But one would not be ready to say, confidently, such is not the rule of law, without more consideration than I have been able to give the subject. But we can readily suppose cases, where no such rule could possibly obtain, and, for aught appearing in the report of the case, that was such a case. So that, it seems to me, the words of PARKE, B., are altogether beyond the scope of the case, and, as I think, too general and require qualification.

But the case of *Davies* v. *Mann* seems to me to merit a different consideration from that of *Bridge* v. *Grand Junction Railway Co.* In that case the beast, which was run over by the defendant's team,

was, of course, incapable of exercising care or prudence. The only question, which could be made in the case, is in regard to negligence on the part of the plaintiff,—whether it was ordinarily safe in him to suffer the animal, a donkey, to be in the road *fettered.* Lord ABINGER says, It does not appear but "the ass was lawfully in the highway, "—and if it did " it would make no difference, for, as the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." This brings this case within the principle of those cases, which have been decided, in regard to setting spring guns, sharp knives, &c., on one's own grounds, for the protection of game, where persons, *having no reason to suspect such weapons were so set,* have, by trespassing on such grounds, been seriously injured, and have, notwithstanding their own misconduct, been suffered to recover damages of the owner of the grounds,—for the reason, perhaps, that such acts were esteemed gross negligence in the land owners.

And this seems to us to be carrying the rule farther, than is necessary to entitle the plaintiff to retain his verdict in the present action. Here the jury have found, that the plaintiff was properly suffered by his parents to attend school at the age and in the manner he did, and that the injury happened through the ordinary neglect of the defendant; or, if not properly suffered to go to school, then that the defendant was guilty of gross neglect; for the Judge put the case in the alternative to the jury, and they have found a general verdict for the plaintiff. And we are satisfied, that although a child, or idiot, or lunatic, may, to some extent, have escaped into the highway through the fault or negligence of his keeper, and so be *improperly* there, yet if he is hurt by the negligence of the defendant, he is not precluded from his redress. If one know, that such a person is in the highway, or on a railway, he is bound to a proportionate degree of watchfulness, and what would be but *ordinary* neglect, in regard to one whom the defendant supposed a person of full age and capacity, would be *gross* neglect as to a child, or one known to be incapable of escaping danger. *Boss* v. *Litton,* 5 C. & P. 407, [24 E. C. L. 384.]

The only remaining inquiry is, whether a plaintiff, of the tender age of this plaintiff, is bound to the same rule of care and diligence

on his part, in avoiding or escaping the consequence of the neglect of others, which is required of persons of full age and capacity, in order to maintain his action for redress? In *Lynch* v. *Nurdin*, 1 Ad. & E., N. S., 28, [41 E. C. L. 422,] the question came directly under review before the Queen's Bench, and was very learnedly discussed and fully considered, and that court very fully determined, that no such rule of diligence can be applied to an infant plaintiff of very tender years. Lord DENMAN, Ch. J., after citing the opinion of Lord ELLENBOROUGH in *Butterfield* v. *Forrester*, says, " Ordinary care must mean that degree of care, which may reasonably be expected of a person in the plaintiff's situation, and this would evidently be very small indeed in so young a child." The whole case goes upon the ground, that all, which is to be required of the plaintiff, is care and prudence equal to his capacity. We see no reason, whatever, to doubt the perfect soundness of the decision. Indeed, any other rule would be wholly impracticable, and must ultimately be abandoned by courts, because juries could not be made to act upon any such artificial and arbitrary rules of determination.

What is reasonable skill, proper care and diligence, &c., can only be determined, as matter of fact, by the jury. It is impossible to establish any general rule upon so indefinite a subject; and it is impossible to make juries, or merely practical men any where, determine these matters except upon the circumstances of each particular case. It is true, no doubt, that the defendant, in such cases, is to be allowed a favorable construction of his own conduct, with reference to what he had reason to expect of the other party, at the time. One might possibly injure a deaf or blind man, without fault, through ignorance of his infirmity, expecting him to conduct differently from what he did. But in the case of a child four years old, there could be no doubt, the defendant was bound to the utmost circumspection, and to see to it, that he did not allow his team to acquire such impetus, after he saw the child, that he could not check them, or avoid injury to the child.

We have not felt bound to go into an extended review of the case of *Hartfield* v. *Roper*, 21 Wend. 615; for the facts in that case and the finding of the jury in this case have made so wide a difference in the two cases, that one is no guide to the determination of the

other. The case of *Hartfield* v. *Roper* is, so far as it has any application to the present case, altogether at variance with that of *Lynch* v. *Nurdin*, and far less sound in its principles, and infinitely less satisfactory to the instinctive sense of reason and justice.

Judgment affirmed.