## Calvin Daniels v. Richard Clegg.

*Highway: Ordinary prudence : Use of the road.*    In the use of a public highway one has a right to expect from others ordinary prudence, and to rely upon that in determining his own means of using the road; he may travel upon any portion of it except when he is about to meet and to pass another vehicle, when he must seasonably turn to the right of the middle of the traveled part of the road.

DANIELS *v.* CLEGG.

*Highway: Collision: Ordinary care: Contributory negligence.* Injury to plaintiff's horse and vehicle, resulting from defendant's negligence in driving on a highway, will not entitle plaintiff to recover, if by using ordinary care he might have avoided the collision, notwithstanding the defendant failed to turn out to the right.

*Highway: Negligence: Burden of proof.* In an action to recover damages caused by a collision on a highway, the burden of proof is upon the plaintiff to show, not only negligence and misconduct on the part of defendant, but also ordinary care and diligence on his own part.

*Requests to charge.* The practice sometimes adopted in presenting requests to charge, of clothing substantially the same proposition in various forms of words, so shaded as to produce a first impression of a slightly different meaning, criticised and condemned.

*Contributory negligence: Request to charge.* A modification to requests to charge that "if the jury find that the collision was caused by the negligence of both parties, the plaintiff cannot recover," and that "if the plaintiff's negligence concurred or contributed in producing the injury, the defendant is entitled to your verdict," to the effect that the plaintiff's negligence, to defeat his recovery, must be material, and must materially contribute to the injury, is not error.

*Requests to charge.* The refusal to grant a request to charge, which is strictly and technically correct, after having charged correctly five or six times upon the same point, is not error; and an instruction that "if the plaintiff's daughter, by driving at the pace she did drive, contributed to produce the injury, then the plaintiff cannot recover," 'is not strictly correct.

*Negligence: Age: Sex.* On the question of whether the plaintiff's daughter (who alone was driving his horse when the collision occurred), was guilty of negligence, it is proper that her age, and the fact that she was a woman, should be considered by the jury; and the degree of care and skill to which she should be held, is that only of a person of her age and sex, and not necessarily the same that would be required of plaintiff himself if he had been driving at the time.

*Law of the road: Traveled part of the road: Statute construed.* The "traveled part of the road" referred to in the statute (*Comp. L.,* § *2002*) means that part which is wrought for traveling, and is not confined simply to the most traveled wheel track.

*Adopted statutes: Rules of construction.* This statute, being adopted from the statute of Massachusetts, is construed in accordance with the construction put upon it by the courts of that state prior to its adoption here, notwithstanding the courts of that state have since construed it differently.

*Practice in supreme court.* In a case brought up by bill of exceptions, a question of a lack of evidence on an essential point will not be considered where the bill of exceptions does not show that the point was raised at the trial, or that any exception was taken on that ground, and where no such error is assigned, but the whole frame of the bill, as well as the requests of the plaintiff in error (defendant below), goes upon the implied admission of the fact.

*Trespass: Remedy.* An action of trespass will lie for an injury to plaintiff's horse and carriage, caused by defendant's negligence while driving on the highway, and by his failure to seasonably turn out as required by the statute.

*Declaration: Justice's court.* A declaration in a justice's court, which is entered upon his docket and set out in the record as follows: "Plaintiff declared in trespass to his damage one hundred dollars for injury to buggy and horse," but to which no objection was taken before the justice, is held to be sufficient.

28 MICH.—5.

*Charge to the jury.* The charge to the jury is to be construed together as a whole; and where a portion of it which standing alone would bear a construction that might mislead the jury, is complained of, the objection will not be sustained if, when considered with the rest of the charge, the jury would not be likely to put such a construction upon it, or to be misled by it.

*Submitted on briefs July 11. Decided October 8.*

Error to Lenawee Circuit.

*C. A. & S. C. Stacy,* for plaintiff in error.

*George L. Bachman,* for defendant in error.

CHRISTIANCY, CH. J.

This was an action of trespass originally brought in a justice court by Clegg against Daniels, and after judgment for plaintiff, taken by appeal to the circuit court for Lenawee county, where the plaintiff recovered a judgment for fifty dollars, which Daniels brings to this court by writ of error and bill of exceptions.

The only statement of the pleadings is that contained in the brief entry of the justice upon his docket, and returned by him as follows: "Plaintiff declared in trespass to his damage one hundred dollars for injury to buggy and horse. Defendant pleaded general issue."

On the trial in the circuit the plaintiff gave evidence tending to show that while his daughter, aged about twenty years, was driving a horse and buggy of the plaintiff's in a westerly direction on the north side of an east and west road in said county, and being in great haste to find her father on account of the dangerous illness of a sister, she came to a hill which she commenced to descend, when she observed the defendant driving in an easterly direction on the north side of the road, coming up the hill with two horses and a wagon; that defendant did not turn out for her at all, but drove directly on, and although she turned as far as she possibly could to the north, a collision ensued by which the buggy or carriage in which she was

riding, was overturned and damaged, and the daughter was thrown out on the north side of the road; that when the buggy was overturned the top struck the bank on the north side of the ditch, which was five or six feet wide, and it was afterward found there; that the buggy canted up on the north side of the road when she was thrown out, and went across the road in that position; that the horse left the buggy on the south side of the road; that the horse was a gentle family horse; that the buggy was injured to the amount of ten dollars, and the horse damaged to the amount of fifty dollars.

The defendant gave evidence tending to show that he was driving in an easterly direction with two young horses, his wagon being loaded with apples; that he was on the north side of the road, and as he reached the foot of the hill and began to ascend, he observed the plaintiff's daughter at the top of the hill, on the north side of the road, driving upon a walk, but that in a moment her horse commenced to go faster, and started on a trot with a loose rein; that as soon as he saw her he commenced to turn to the south; that he turned out sufficiently in season to be upon the right of the middle of the traveled part of the road by the time the plaintiff's daughter would pass him, driving at the pace she was driving at when he first saw her, and that he was on the right of the middle of the traveled part of said road, and of the worked part of it, when the collision occurred; that just as plaintiff's daughter was about to pass him, her horse suddenly swerved to the south, and one of the wheels of the buggy caught in the left hand wheel of the defendant's wagon which was nearest the north side of the road; that her horse became frightened and broke loose and left the buggy on the south side of the road; that the part of said road wrought for traveling is about thirty feet wide at this place, and that two carriages could have passed at the same time between defendant's wagon and the north side of the road in safety, with ordinary care on the part of the parties driving them; and that

the north half of the wrought part of the road was not traveled; and that defendant left his team and caught the horse for plaintiff's daughter, and did what he could to assist her.

All the other evidence stated in the record tended merely to corroborate the evidence above stated, on the one side or the other.

Upon these facts the court, in answer to so many separate requests of the defendant, very properly charged the jury:

*First.* That "in the use of a public highway, a party has a right to expect from others ordinary prudence, and to rely upon that in determining his own means of using the road."

*Second.* That "the defendant in this case had a lawful right to travel upon any portion of the highway he saw fit, unless he was about to meet and pass another vehicle, when he must seasonably turn to the right of the middle of the traveled part of the road."

*Third.* "If the jury find there was negligence on the part of the defendant, and the plaintiff's property was injured, still the defendant is not liable, if by using ordinary care the plaintiff's daughter might have avoided the collision."

*Fourth.* "If the jury find that, at the time of the collision, the defendant was still on the left of the middle of the road, yet the defendant is not liable, if by using ordinary care the plaintiff's daughter might have avoided the collision."

*Fifth.* "If the jury find that the defendant was still on the left of the middle of the road, yet, if the plaintiff's daughter, in going by, through negligence and want of ordinary care, drove her wagon onto the wagon of the defendant, the defendant is not liable in this action."

*Sixth.* "If the jury find that the plaintiff's daughter did not use ordinary care, or was guilty of negligence, the plaintiff cannot recover."

*Seventh.* " To entitle the plaintiff to recover damages for injuries sustained by reason of the collision, he must show the injuries to have been attributable to the misconduct of the defendant, and under such circumstances as to exonerate himself (plaintiff) from all negligence on his part."

*Eighth.* "If the plaintiff, by want of ordinary care, contributed to produce the collision and injury, he is not entitled to recover, and the verdict must be for the defendant."

*Ninth.* "The burden of proof is on the plaintiff, not only to show negligence and misconduct on the part of the defendant, but also to show ordinary care and diligence on his own part."

These several charges were all given in answer to so many separate written requests of the defendant, and it will be noticed that six of them (from the 3d to the 8th of the above points inclusive), relate to the question of contributory negligence on the part of the plaintiff; that the 6th, though charged, was too favorable to the defendant, as it stated that the plaintiff could not recover if his daughter did not use ordinary care, or was guilty of negligence; whereas the plaintiff would still be entitled to recover, though his daughter was guilty of negligence, unless that negligence contributed to the injury,—but of this error in his favor, the defendant cannot complain; that all the others (3d, 4th, 5th, 7th, 8th) involved substantially the same principle, viz.: that the plaintiff could not recover if he or his daughter were guilty of negligence contributory to the injury complained of, whether the defendant were guilty of such negligence or not. Why the same proposition should be urged in so many different forms of words, is difficult to discover.

Such a course is sometimes resorted to for the purpose of entrapping the court into a refusal to charge a correct proposition of law, for which the judgment might be reversed, or to mislead the jury, should the charge be given, by clothing the same proposition in various forms of words sub-

stantially amounting to the same thing, though so shaded
as to produce a first impression of a slightly different mean-
ing,—a habit which has become too prevalent with the bar
in some parts of the state, and which ought to be dis-
couraged and checked; as it not only causes great waste. of
time in the trial of causes, but tends to subvert the ends
of justice, to obscure the real merits of the controversy in
a maze of subtle verbal distinctions, and to degrade courts
of justice into mere schools of dialectics for the exhibition
of contests of skill between the counsel and the court in
the use of mere words, as barren of any useful result as
the exploded logic of the schoolmen.

And for the purpose of avoiding such results, or check-
ing any attempt to convert the court into an arena for set-
tling questions in metaphysics by the verdict of a jury, as
well as to expedite trials and do justice between parties, a
circuit judge ought always to have the right, after once
charging correctly the real proposition involved, to refuse to
charge the same proposition in various other forms of
words, however correct it may be when expressed with such
variations, though it may be well enough, in the discretion
of the court, to submit the same proposition in more than
one form, if there be any danger of being otherwise mis-
understood by the jury.

And if the statute in reference to charging juries (*Comp.
L. 1871, pp. 1527, 1528*) should be thought not to give the
judge this liberty, it ought to be so far amended as to
allow him to refuse to charge the same proposition, though
in different language, more than twice or three times. But,
seriously, there is nothing in the statute which requires the
judge to charge the same correct proposition of law more
than once, or which makes it error to refuse to charge it
again.    The court might therefore very properly have refused
to charge at all upon the requests numbered in the record
six, and seven and a half (five or six entire propositions
involving the same idea seem to have been thought insuffi-
cient without submitting one as fractional upon the same

point), the first of which (No. 6) was that "if the jury find that the collision was caused by the negligence of both parties, the plaintiff cannot recover;" which the court modified and gave as follows: "If the jury find that the collision was caused by the negligence of both parties, the plaintiff cannot recover. I have already said the negligence must be material."

The other request (No. $7\frac{1}{2}$) was: "If the plaintiff's negligence concurred or contributed in producing the injury, the defendant is entitled to your verdict." And this the court modified and gave in the following language: "If the plaintiff's negligence materially concurred or contributed in producing the injury, the defendant is entitled to your verdict." To these modifications the defendant excepted. These two requests, it is true, were correct enough in law, and in accordance with several requests already charged, without the modification which required the negligence to be material; but we think they were equally correct with the modification.

If the words added by the modification had any effect at all, it was simply to impress upon the minds of the jury, that to give the negligence of the plaintiff's daughter the effect to defeat the plaintiff's action, they must be satisfied that it did contribute to the injury, and that the injury would not have occurred without that negligence on her part, but that, though the plaintiff's daughter may have been guilty of negligence, yet if the negligence of the defendant was so gross, and of such a character that the injury could not have been avoided by ordinary care on her part, then her negligence was immaterial and did not contribute to the injury within the meaning of the rule which prohibits a recovery when the plaintiff's negligence has contributed to the injury; because the damages would not, in such a case, have been occasioned, even in part, in any just sense, by her want of ordinary care, but by the negligence of the defendant.—See *Kennard v. Burton, 25 Me., 39.* Taking this part of the charge in connection with all the rest,

of the charge, we think it clear the jury could not have been misled by it, and the course of argument on this point before the jury may have been such as to render it necessary, in the opinion of the court, to make the modification in question, to prevent misapprehension on the part of the jury.    We see no error in the modification complained of.

The court very properly refused to charge as requested (by request numbered $8\frac{1}{2}$ in the record), that "if the plaintiff's daughter, by driving at the pace she did drive, contributed to produce the injury, then the plaintiff cannot recover." He had already charged the correct rule of law upon this point some five or six times over, and was not bound to charge it again, had the request itself been entirely correct; but it was not, because it either required the court to determine at what pace she did drive, or assumed that she might have contributed to the injury by driving at all at any pace.

The court was also correct in charging that "in deciding whether the plaintiff's daughter exercised ordinary care in driving the horse, or was guilty of negligence, the jury should consider the age of the daughter, and the fact that she was a woman;" and "that she would not be guilty of negligence if she used that degree of care that a person of her age and sex would ordinarily use;" and in refusing to charge, that "for the purpose of this case, the daughter should be held to the same degree of care and skill that would be required of the plaintiff himself, had he been driving at the time of the collision."

The case, upon this point, does not, as to the defendant, stand upon the same, or even similar grounds with respect to the plaintiff's daughter, as the case of a railroad engineer or conductor in respect to persons approaching a railroad track while the train is in rapid motion, with teams and wagons which cannot be seen, or the persons driving be recognized, until so close to the track as to render any knowledge of the character or the capacity of such persons of any avail; as in the case of the *Lake*

*Shore & Mich. Southern R. R. Co. v. Miller*, 25 Mich., 274. Besides, railroad trains must, subject to some special qualifications, necessarily have the precedence over teams and wagons at highway crossings; and all persons are bound to notice the approach of such trains at such crossings, and to keep out of the way, as was properly held in that case. And yet, even in that case, as to children upon the track, ahead of the train, who could be seen by the engineer, or other persons known to him to be incompetent or deprived of any of their faculties necessary to their safety under such circumstances, it was held that the engineer, was bound to act with reference to the incapacity of such persons thus appearing or known to him, and so far as in his power, to govern his train accordingly, until such persons were out of danger. And the same principle was recognized with respect to the rights and duties of street railway companies towards children upon, or getting on or off, their cars.—*East Saginaw City Railway Company v. Bohn*, 27 Mich., 503.

These cases fully recognized the principle that, in deciding upon the degree of diligence to be required of children, or other persons more or less incompetent, that incompetency must be taken into account; and no higher degree of diligence must be required of such persons than we have a right to expect, or than experience has shown such persons generally would be likely to exercise under like circumstances; and that other persons to whom that incompetency is apparent, or who know or have good reason to believe it, are bound to exercise towards such persons a correspondingly higher degree of care, according to the degree of that incompetency, so far as, under the circumstances, it may be reasonably within their power. This principle, thus limited, is one of simple justice, of common sense and common humanity, too obvious to require comment, and has often been recognized by courts in various forms.—See *Robinson v. Cone*, 22 Vt., 213 ; *Birge v. Gard-*

28 MICH.—6.

*iner*, *19 Conn.*, *507* ; *Kerr v. Forgue*, *54 Ill.*, *482* ; *Chic., Bur. & Quincy R. R. Co. v. Dewey*, *26 Ill.*, *255.*

The charge in this case comes directly within this principle. The defendant saw the plaintiff's daughter approaching, driving the horse and carriage. No one would ordinarily expect, and the defendant had no right to expect, from a young woman thus situated, the same amount of knowledge, skill, dexterity, steadiness of nerve, or coolness of judgment, in short the same degree of competency, which he would expect of ordinary men under like circumstances; nor, consequently, would it be just to hold her to the same high degree of care and skill. The incompetency indicated by her age or sex,—without evidence (of which there is none) of any unusual skill or experience on her part,—was less in degree, it is true, than in the case of a mere child ; but the difference is in degree only, and not in principle. We think the charge upon this point was correct; and that the court also properly charged that " while it is lawful for a person to travel on the left of the middle of the road when it is not occupied by a person coming in an opposite direction, still, as the law requires him to turn out seasonably when he meets a team, the law would require him to use more than ordinary care to keep out of the way and avoid a collision with passing teams, while on the left of the center of the road ; and unless defendant used a very high degree of care to get out of the way, and to the right of the center of the road, and the collision occurred on the left of the center of the road, and without the material negligence of the plaintiff's daughter, the defendant would be liable."

The judge further charged that what is meant in the statute (*Comp. L.*, § *2002*) by " the traveled part of the road," is that part which is wrought for traveling; and this is assigned for error.

If this is not the meaning of the statute, then (I put the case by way of illustration) though the traveled track (where the wheels have generally run) might in the present

instance have been within one or two feet of a perpendicular bank or wall, or of a deep and impassable ditch on the north side of the road,—the defendant's left,—and though the wrought part of the road might have been two rods wide at his right and in good order for traveling, the defendant would have been under no obligation to turn to the right beyond the center of the wheel tracks, though by neglecting to turn further he left no room at his left in which the plaintiff's daughter could possibly pass with the horse and carriage she was driving, and if the road continued thus narrow and impassable, for the whole space between them when they first saw each other, and for some distance behind her carriage, and if he had a right to refuse to turn beyond the center of the traveled track, he had the right to drive on, giving her only that amount of room, and she could neither drive forward nor stand still, with safety. And, though she might, under the circumstances, perhaps, be excused in attempting to escape from the dilemma by turning to her own left and driving around his team and vehicle, clearly she would have been under no greater obligations to do so (when the statute gave her the right, if it did not give her the duty to turn to the right) than he would have been to turn far enough to his right to make it possible for her to pass. And if she had stood still after getting as far as possible to her right hand of the road, would he have had the right to drive on as long as his vehicle was south of the center of the traveled track, though in doing so he should drive over her? Does not the statute, upon the construction claimed by the counsel, bring the rights of the parties, as well as their vehicles, to a dead lock?

All who have any experience in traveling the common roads in this country know, that while it is common to work fit for traveling a space in or near the center of the four rods right of way, amply sufficient, and generally more than sufficient, for teams and carriages safely to pass, yet the track where most of the travel goes, or in other words

the *most* traveled wheel track, is often near, and some-
times within a foot of one side or the other of the part
thus fitted for traveling, as chance or the caprice of the
drivers or their teams may direct; and hence the inter-
pretation of the statute, contended for by the plaintiff in
error, would render the statute an actual obstacle, instead
of a protection to travel, in many cases.    But in fact all
the wrought part of the road is generally traveled to a
greater or less degree, and must necessarily be in turning
out when teams meet or pass each other.

The construction adopted by the court is the same
adopted by the supreme court of Massachusetts, under the
same provision of statute, in *Clark v. Com'th, 4 Pick., 125,*
decided in 1826.    The same provision was enacted into our
statutes in the revision of 1838 (*Part 1, Title IX., Ch. 8,* § *1*),
though we had a similar statute from 1833 (*Laws of 1833,
p. 116,* § *38*), which used the term "center of the *road*." In
adopting this provision from the Massachustts statute in
1838, it is reasonable to suppose the legislature meant to
adopt it with the same meaning thus settled by the courts
of that state, as shown by the case above cited, and
decided twelve years before.    And though the supreme
court of that state seem to have since, in 1846 (*Com'th v.
Allen, 11 Metc., 403*), adopted the contrary interpretation
now contended for by the plaintiff in error, we are not
satisfied with the correctness of the decision, and think
such an interpretation of the statute, as applied to com-
mon roads in this state, would be extremely pernicious,
and contrary to the legislative intent.

A point is raised by the brief of the plaintiff in error,
and was urged upon the argument, that the plaintiff below
did not prove on the trial that the horse and buggy were
his.    In answer to this it is sufficient to say that this is
not a case made, setting forth facts found or admitted, but
a bill of exceptions; that by the bill it does not appear
that any such point was raised at the trial; no exception
was taken on any such ground, nor any such error assigned.

And the requests of the defendant below, and the whole frame of the bill, go upon the implied admission that the plaintiff's ownership was not contested, but either clearly proved or admitted.

It is further objected that no mere action of trespass, like the present, will lie; but that the action should have been brought directly upon the statute, and the declaration should have averred the neglect or refusal seasonably to turn to the right of the traveled road, as the real ground of the action. Such an allegation would undoubtedly be nec- essary in a prosecution for a penalty under this statute, where this neglect would be sufficient to render the defend- ant liable, without reference to the plaintiff's or complain- ant's negligence. But whether this neglect of the defend- ant would alone authorize the plaintiff to recover damages in a civil suit *upon the statute*, in which the declaration merely alleged that neglect or refusal as the only cause of the injury (see *Goodhue v. Dix, 2 Gray, 181*), we need not decide, though we are inclined to think the proof of such neglect of the defendant would not even there be sufficient without evidence of ordinary care on the part of the plain- tiff.—See *Com. v. Allen, 11 Metc., 403; Kennard v. Bur- ton, 25 Me., 39.*

But we see no reason to doubt the right of the plain- tiff to maintain this action of trespass, for the injuries done to his horse and carriage by the defendant driving his wagon against it, or by placing it in the way when she was rightfully passing, or neglecting to turn out, as she had a right to expect he would. His duty to turn to the right beyond the center of the road, was imposed by the statute; but the duty is the same and the effect the same, whether im- posed by a statute, or by custom, or by common law; and it may be doubted whether, in the absence of any statute, in this country, after the custom had become settled as it long ago was, to turn to the right of the center of the road when teams meet, the same duty would not be recog- nized by the courts, as the like duty of turning to the left

was in England, as a part of the common law. But with the statute we see no difficulty in sustaining this common-law action of trespass.

It is quite probable that the limitation of one year, fixed by *section 2003, Compiled Laws*, would apply to this, as well as to the public prosecution, or the strictly statute actions there provided for, as the terms, "any action for such damages," etc., are broad enough to cover it.

We think the declaration in the justice's court was sufficient, where no formal declaration is required, and unless objected to, almost any declaration must be held sufficient which indicates the general nature of the plaintiff's claim.

One assignment of error remains to be noticed. The court charged that "if the jury should find from the evidence that when the collision occurred the defendant was driving on the left of the middle of the traveled part of the road, it is evidence tending to prove, and raises the presumption, that the collision was caused by the wrongful act and negligence of the defendant; but that presumption may be overcome and rebutted by evidence that satisfies the jury that the defendant attempted seasonably to turn to the right of the center of the road, and that the plaintiff's daughter might have avoided the collision by the exercise of ordinary care, and that her negligence caused or materially contributed to the collision."

This charge, if standing alone, and as the only charge upon the point, might have been erroneous, as it might then have been understood as intended to declare that the burden of proof was upon the defendant to show that the plaintiff's daughter did not exercise due care; but when taken in connection with the whole charge upon this point, in which the jury had been told that "the burden of the proof was on the plaintiff, not only to show negligence and misconduct on the part of the defendant, but also to show ordinary care and diligence on his own part," we think the jury could not have been misled by it. And it will be noticed that this charge does not require that the defendant

should introduce the evidence of the attempt seasonably to turn out to the right, or that the plaintiff's daughter might have avoided the collision, but that under this charge it would be sufficient for the protection of the defendant if these facts appeared from any of the evidence in the cause; and when the whole charge is taken together we think it can fairly be understood as stating only in effect, that the failure of the defendant to turn to the right would be evidence tending to show that the injury was caused by the negligence of the defendant,—and this is certainly true,—but that if it appeared in any way from the evidence that the plaintiff's daughter, by the exercise of ordinary care, might have avoided the collision, the defendant was not liable. Thus understood the charge was correct; and we think the charge as a whole, must have been so understood by the jury.

Upon the whole case, therefore, we think the judgment should be affirmed, with costs.

The other Justices concurred.