## LYON v. WATSON.

TRIAL—INSTRUCTIONS TO JURY—RECOUPMENT.

In an action to recover a balance due on a note given by defendants for timber purchased from plaintiffs, together with an amount alleged to be due the latter under a contract by which they agreed to saw the timber in a workmanlike manner, where defendants admitted the indebtedness, but claimed damages, by way of recoupment, on the ground that the timber was improperly sawed, an erroneous charge that the claim of damages for defective sawing had no connection with the claim on the note, and could only be shown in connection with plaintiffs' demand for sawing, and that plaintiffs were entitled to a verdict in any event for the amount due on the note, was cured by a subsequent instruction that, if defendants established their claim to damages in a sum greater than the whole amount sued for (specifying such amount), they should have a verdict for the difference, and that, if the damage so sustained was less than plaintiffs' claim, the amount of such damage should be subtracted therefrom, and plaintiffs should have a verdict for the balance.

Error to Muskegon; Russell, J. Submitted April 10, 1896. Decided May 26, 1896.

*Assumpsit* by Thomas R. Lyon and others against William G. Watson and others for a balance due on a bill for sawing and on a promissory note. From a judgment for plaintiffs, defendants bring error. Affirmed.

*Smith, Nims, Hoyt & Erwin*, for appellants.

*George A. Farr* (*Bunker & Carpenter*, of counsel), for appellees.

MOORE, J. Plaintiffs sued to recover the sum of $11,-089.77, which they claimed was due them from the defendants,—$10,010.29 upon a promissory note, and the

balance upon an unpaid saw bill. The sum of $10,010.29 was the amount yet unpaid on a note given by defendants to plaintiff Lyon for $90,000, for part of the purchase price of the timber on half a section of land, which note was indorsed at the date thereof by Mr. Lyon to the plaintiffs in this case. Payments had been made upon the note, from time to time, until all had been paid except $10,010.29. The defendants, on the same day they bought the timber of Mr. Lyon, assumed a contract previously made between Mr. Lyon, Agent, and the Butters & Peters Salt & Lumber Company, wherein the company was to log the timber on said land. At the same time Lyon agreed with defendants that, as often as they paid $10,000 on the note and contract, he would consent to their cutting 1,000,000 feet of timber, and no more. On the same day Mr. Lyon, Agent, made a contract with defendants, agreeing to saw all of said timber in a good and workmanlike manner, at his mills, for $1.75 per 1,000, Scott's tally. The defendants agreed to pay Lyon, Agent, on the 10th of each month, for all the lumber sawed the preceding month, on an estimate made by H. A. Scott or J. S. Woodruff. It is claimed by defendants that Lyon, in all these contracts, was acting for all the plaintiffs, and that all three agreements were contemporaneous, and together formed but one transaction. It was claimed by way of defense that plaintiffs did not manufacture the lumber in a good and workmanlike manner, and that as a result the logs did not produce as much merchantable lumber as they ought, and that the lumber manufactured was of much less value than it would have been if properly manufactured; and defendants claimed damages, by way of recoupment, to the amount of $35,901.25. In the notice attached to their plea, defendants claimed a set-off of $6,500 for 1,000 logs, but that claim was abandoned in court. At the close of putting in the proof, it was admitted in open court by the attorney for defendants that there was due plaintiffs upon the note, and for the balance of the

unpaid saw bill, the sum of $11,089.77, except as the amount was reduced or extinguished by the damages defendants had suffered by way of recoupment. Defendants claimed that they should have a verdict for $24,000, stated in round numbers.

Plaintiffs' claim in relation to the manufacture of the lumber was that it was properly manufactured; that one Allport, an experienced lumber inspector, was placed by defendants at plaintiffs' mills to see that the logs were cut to suit defendants; that Mr. Field, a member of defendants' firm, was at the mills in June, July, and September, while the lumber was in the process of manufacture, and after more than 6,000,000 of feet of it had been cut, and made no complaint to any of the plaintiffs until all of the lumber was manufactured and shipped. Plaintiffs also claim that estimates were made each month by either Scott or Woodruff, as provided in the contract, and that each month's saw bill was paid by defendants. Plaintiffs also claim that during this business transaction a large amount of correspondence was had, and 69 letters were put in evidence, written by defendants to plaintiffs, the last of which was written nearly a year after the lumber had been sawed, and that no complaint was made of the manner in which the lumber was sawed until in the last letter; that, in view of all this, the defendants must be deemed to have waived any defect in the manufacture of the lumber, if any existed. They also claim that defendants had opportunities of knowing all about the manufacture of the lumber when these things were done by them, and that they were bound to use their opportunities. The defendants answer these claims by saying that plaintiffs had agreed to manufacture this lumber in a good and workmanlike manner, and must perform their contract; that, while Mr. Allport was at the mill, he was there only a part of the time; that Mr. Field visited the mill but a few times; that none of the defendants had knowledge of the extent of the defects until long after the lumber had been manufactured; that they can-

not be deemed to have waived the defects of which they had no knowledge; that, in relation to the monthly estimates, what they did was simply to make payments, but not settlements; and that they are not concluded from recovering damages by anything they have done. Testimony in detail was offered by both sides to support these various contentions. No errors are assigned by appellants, except as to the charge of the trial judge.

It is insisted by the appellants that the trial judge spoke of the monthly payments as being settlements, and did not leave it to the jury to determine whether they were settlements or only payments. The record discloses that estimates were sent each month, as provided in the contract, and that some of those monthly estimates were paid in full. The charge in relation to that feature of the case was as follows:

"The evidence shows here, beyond any question, that the plaintiffs here, at the end of the months of June and July and August,—perhaps at other times,—sent statements to the defendants as to the amounts that they claimed that they had sawed, on an estimate, according to contract. And it is claimed on the part of the plaintiffs that the defendants settled for these various amounts; that at that time they had knowledge, or ought to have had knowledge, if they had been diligent, as to just how this lumber was manufactured,—all about it. In that respect, I will say, gentlemen, that the defendants had a right to waive any defects with reference to the manufacture of this lumber, if defects actually existed; and if you should find that at the end of these different months they,—having full knowledge of the manner in which the lumber was manufactured,—that they made full and complete payments, as to the amounts claimed the different months, with a view of waiving and accepting the fulfillment of the contract on the part of the plaintiffs as they had fulfilled it up to that time, having a knowledge of the manner of the manufacture, it would be a waiver, and they would be estopped from claiming that the contract was not fulfilled on the part of the plaintiffs after that, as far as they had settled. That would be true with reference to the settlement, or claimed

settlement, that was made in June, in July, in August, or at any other time. If the defendants here made payments of the exact amounts claimed on the part of the plaintiffs at that time, having full knowledge as to how the lumber was manufactured, with a view of waiving any defects,—any defect with reference to the manufacture,—they would not be entitled to complain after they made that waiver. It will be for you, gentlemen, to determine, taking into consideration all the circumstances surrounding the case, as to whether they in fact did, or whether they intended, when they made those different payments, to make a waiver."

We think the charge left it to the jury to determine whether what was done were simply payments, or whether they amounted to settlements, and that the assignment of error was not well taken.

The other assignments of error necessary to be considered relate to that portion of the charge of the court which referred to the amount the jury might find to be due the plaintiffs. The trial judge charged the jury:

"Under the testimony in this case, the plaintiffs are entitled to recover the full amount of the promissory note given by the defendants to Thomas R. Lyon, with interest on the same. That amount, with interest, as computed by the plaintiffs, is $10,010.29. The claim made by the defendants for damage by reason of defective or improper sawing can be shown in this case, under the pleadings, only in connection with the plaintiffs' claim for the balance due on the saw bill. It has no connection with the claim on the note."

This portion of the charge, standing alone, would undoubtedly be error. It was modified, as we shall see later, but it is insisted by counsel for defendants that what was subsequently said to the jury could not cure the error. They call the attention of the court to the fact that the jury returned a verdict for just the amount due upon the note if no question of recoupment was in the case, and argue that the jury must have understood, or at least may have understood, that they must return a

verdict for the amount unpaid on the note, even though they may have believed that defendants were entitled to a large amount by way of recoupment. Counsel say: »

"Where the jury apparently accept and act upon an erroneous instruction given by the trial judge, it is none the less a damaging error because accompanied by an opposing instruction. *Sterling* v. *Callahan,* 94 Mich. 536; *Grand Rapids, etc., R. Co.* v. *Monroe,* 47 Mich. 152."

In considering whether the charge misled the jury or not, we must take into account the facts appearing in the record. It should be borne in mind that the note was given originally for $90,000; that it had all been paid without controversy, except the last payment and interest; that it was given for the purchase price of timber; that there is no pretense that the timber is not as represented; that, so far as the purchase and sale of the timber were concerned, there is no claim of damages by way of recoupment. The claim for damages by way of recoupment arises because of the defective manufacture of the lumber. We should, in considering this question, hear all that was said by the trial judge bearing upon the matter which is assigned to be error. In addition to what has been quoted, the judge said to the jury:

"The plaintiffs brought this suit to recover an amount claimed to be due them from the defendants on a promissory note executed by the defendants, and given in part payment for the timber on a certain half section of land in the county of Mason, and for a sum claimed to be due to the plaintiffs from the defendants on account, and for services rendered by the plaintiffs for the defendants in manufacturing their logs into lumber, which services were rendered under a certain contract which has been put in evidence. By the express terms of the contract between the parties, under which the sawing was done, the plaintiffs were to do the work of sawing in a good and workmanlike manner. The defendants claim that the plaintiffs did not perform their part of the contract in that respect, but that said work was badly and improperly performed. * * * The court instructs you that, under the law, the defendants are entitled, in this action, to re-

coup against the claim of the plaintiffs the damages which they have sustained, unless they have waived that right, or settled with the plaintiffs for any damage which they may have sustained. * * * In this case, gentlemen of the jury, the plaintiffs brought suit against the defendants for the purpose of recovering the amount which they claim to be due on the promissory note, as a balance, and also an amount which they claim to be due on an account which they had between themselves and the defendants in this suit. It is conceded in this case, gentlemen, that the amount due on the note which was given for the timber is at this time $10,010.29. It is also admitted that at the time this suit was brought the defendants were indebted to the plaintiffs, on an account between them, in the sum of $1,079.48. It is admitted, gentlemen, that at the time this suit was brought the defendants were indebted to the plaintiffs on these two claims, and that at the time the computation was made—and that will be the amount as now claimed—there was due from the defendants to the plaintiffs the sum of $11,089.77, and for that amount the plaintiffs in this suit are entitled to recover. The defendants herein claim—and about that there isn't any dispute—that during the winter of 1892-93, and perhaps before that time, Mr. Thomas R. Lyon was the owner of a half section of land in the county of Mason; that these defendants had been investigating with a view of making the purchase, and that in the early spring of 1893 they did make the purchase of the timber on these lands for the sum $100,000; that, as a part of that transaction, they were to take from the hands of Lyon & Co. a contract which he had with the Butters & Peters Salt & Lumber Company, who were the owners or operators of a railroad in the vicinity where these lands were, by the terms of which contract the Butters & Peters Company were to log and transport and deliver into the booms of Thomas R. Lyon, Agent, the timber on these lands, and also the timber on other lands, and, so far as that contract applied to this particular half section, it was assigned to these defendants, and the obligations assumed by them. Now, it appears from the evidence in this case that at that time they paid $10,000 down on the purchase price of this timber, and gave their note of $90,000. As I say, it is conceded that the payments have been made in accordance with the contract,

from time to time, until the amount which is now due for the balance of that note is $10,010.29. It is also unquestioned here that the arrangement was that the defendants here were to take the contract with the Butters & Peters Company, the same as Mr. Lyon had it; and it is conceded here that there is nothing, in fact, as far as it applies to that particular contract, to be settled in this case. And there is no question in this case to be settled by you, gentlemen, no controverted questions with reference to the purchase of the timber,—because it is conceded on both sides that the amount of the balance is as I have stated.    *    *    *

"After the purchase of this land, or at the same time, an arrangement was entered. into by which the plaintiffs in this case, who were a copartnership doing business under the firm name of Thomas R. Lyon, Agent, at Ludington, were to manufacture this timber.    *    *    * It is claimed here on the part of the defendants that they did not perform their part of the contract as it should have been performed.    *    *    * Now, gentlemen, if this is true, the defendants here are entitled to recover from the plaintiffs in this case the amount of damages which they have sustained by reason of the plaintiffs' not having fulfilled their contract as they agreed to fulfill it, unless the defendants have in some manner waived their right to recover such damages.    *    *    * They waive any claim whatever, gentlemen, with reference to the amount for lost logs. Then they claim that all the damages which they have sustained by reason of this improper manufacture and the nonfulfillment of the contract on the part of the plaintiffs in this case is $35,901.25. Now, gentlemen, if you should find that the claim has been established by a fair preponderance of the proof, and that the different claims made here on the part of the defendants are correct, absolutely, it would be your duty then to take from the amount of $35,901.25 the amount that is conceded to be owing to the plaintiffs in this case; and the balance between those amounts would be the amount of your verdict in favor of the defendants, if you find that their claims have been fairly established by a preponderance of proof, and have not in any manner been waived. And in that case that would be the amount of your verdict.

"(Do you claim interest on this amount?

"(*Mr. Hoyt:* No.)    *    *    *

"If you find that the plaintiffs are entitled to recover

the amount of their account and the note, and that the defendants are not entitled to anything by reason of damages sustained, why, the amount of your verdict will be the amount of $11,089.77. If you find, taking everything into consideration, that the defendants have sustained damages, you will determine then what those damages are. If they are more than $11,089.77, you will take the amount of $11,089.77 from the amount of damages which you claim the defendants have sustained, and the difference between the two will be the amount of your verdict rendered in this case in favor of the defendants. If you find that the defendants have sustained damages, —that those damages are not as much as $11,089.77,— then you take the amount of damages which you find that the defendants have actually sustained, and take that amount from the amount of $11,089.77, and the difference between the two would be the amount of your verdict in favor of the plaintiffs. Now, gentlemen, you may take the case, and render such a verdict as shall satisfy you, from all the evidence in the case, controlled by the instruction given by the court."

It is a well-settled rule that, in construing the charge given by the judge, it is all to be considered. An assignment of error based upon a detached sentence which is not strictly accurate will not be sustained, if, when construed in connection with the context, the jury could not have been misled, and the charge as a whole is correct. *Daniels* v. *Clegg*, 28 Mich. 32; *Welch* v. *Ware*, 32 Mich. 77; *Burdick* v. *Michael*, 32 Mich. 246; *Turner* v. *People*, 33 Mich. 363; *Greenlee* v. *Lowing*, 35 Mich. 63; *Eggleston* v. *Boardman*, 37 Mich. 14; *People* v. *Finley*, 38 Mich. 482; *Lake Superior Iron Co.* v. *Erickson*, 39 Mich. 492; *Frankel* v. *Coots*, 41 Mich. 75; *Russell* v. *Phelps*, 42 Mich. 377; *Driscoll* v. *People*, 47 Mich. 413; *Hart* v. *Newton*, 48 Mich. 401; *Kuney* v. *Dutcher*, 56 Mich. 313. We think the only inference the jury could draw from the charge, taken as a whole, was that the claim of damages by way of recoupment did not grow out of the contract for which the note was given; that it was conceded that there was due and unpaid upon the note, for which plaintiffs were entitled

to recover, the sum of $10,010.29; that the claim for damages by way of recoupment grew out of the contract for the manufacture of the lumber; that the jury might find such an amount of damages in favor of the defendants as the facts warranted, not exceeding $35,901.25. The judge correctly stated the defendants' claim. Taking the charge together, we do not think it ambiguous. It is not difficult to see that in arriving at the verdict the jury probably found that there were defects in the manufacture of the lumber, but that they had been waived by payments of the monthly estimates; and the jury allowed, by way of damages, the unpaid balance on the saw bill.

We do not think it necessary to discuss the other assignments of error, as we do not think they have merit. The trial was a long one, and we think the issues were fully and fairly submitted to the jury.

The judgment is affirmed, with costs.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.