ALFRED F. WILCOX v. TOLEDO & ANN ARBOR RAILROAD CO.

*Justices' Courts—Pleadings—Description of plaintiff—Suit on assignment—Corporation de facto.*

Pleadings in justices' courts are to be viewed with liberality; and where a declaration, though informal, fairly apprises the defendant of the claim made against him, it will be held sufficient if not demurred to.

Suit on a conditional promise to pay money to the order of a railroad company. The promise was in writing, and was filed with the justice as the sole cause of action. Upon it was endorsed the name of a person who added to his name the word "assignee." The defendant pleaded the general issue, and went to trial. It was shown on the trial that the payee in the promise had been put in bankruptcy, and the endorser of the paper was assignee in bankruptcy thereof. *Held*, that the objection that the plaintiff did not by its declaration aver its right to recover as assignee, would not be sustained on the final submission of the case.

Where the assets of a railroad company are sold in bankruptcy, and the purchaser of its assets transfers them to another who organizes a new company, and in the papers expressly recognizes the new company as assignee from him of the assets, this is a sufficient assignment to enable the new company to bring suits upon obligations given to the old company.

A railroad company having completed a railroad, and being engaged in operating it, must be deemed, in suits brought by it, a corporation *de facto*, and a private individual thus sued cannot contest its legal organization. *Swartwout v. Railroad Co.* 24 Mich. 389.

Error to Washtenaw. Submitted Jan. 7. Decided June 11.

ASSUMPSIT on certiorari from before a justice. Plaintiff brings error.

*Henry Z. Potter* for plaintiff in error.

*Frazer & Hamilton* for defendant in error.   An assignment of a claim to the plaintiff is sufficiently averred in an action before a justice by the indorsement of the assignment on the instrument sued upon, signed by the assignee.   *Snell v. Gregory* 37 Mich, 500; *Kelly v. Waters* 31 Mich. 404; *Draper v. Fletcher* 26 Mich. 154.

COOLEY, J.   This case had its origin in justice's court, where the railroad company brought suit upon the following paper writing as its sole cause of action:

"$300.                  MILAN, MICHIGAN, August 21, 1871.

For the purpose of promoting and aiding the construction of the Toledo, Ann Arbor & Northern Railroad, and in consideration of the benefits to be derived therefrom, I do hereby pledge and agree to pay to the order of the Toledo, Ann Arbor & Northern Railroad Company the sum of three hundred dollars in installments of twenty per cent. on each eight miles of iron laid on the line of said road, except the last installment, which shall be payable on the ironing of the said road from the State line to Ann Arbor, and upon the further condition that said road shall be built within one-half mile of the Whiting hotel in the village of Milan.

[Signed]                         A. F. WILCOX."
Endorsed on the back, "E. D. KINNE, Assignee."

The judgment was removed to the circuit court by certiorari, the plaintiff in error assigning six errors.   The first three of these go to the order in which evidence was admitted in justice's court.   As the order was discretionary with the justice, these assignments of error need not be further noticed.   The others were as follows:

"4.   That said justice erred in admitting any evidence of an assignment or assignments under plaintiff's declaration upon said special contract, which was not transferable except by assignment, since no assignment was suggested or averred in said declaration.

5.   That said justice erred in admitting said contract declared upon in evidence, there appearing upon the face to be no privity of contract between plaintiff and defendant, since defendant was apprised neither by suggestion or averment that plaintiff obtained as assignee, and because there was no averment and no evidence of ownership by plaintiff of said contract.

43 MICH.—74.

6. That said justice erred in denying defendant's motion to non-suit the plaintiff for the variance between the cause of action set forth in his declaration and his proofs upon the trial."

The declaration was oral, and was entered by the justice on his docket as follows: "On the common counts in assumpsit, and on note or contract, now here filed as a part of the declaration, and claims damages three hundred dollars." The plaintiff also notified defendant that the paper writing was the sole cause of action. The defense is entered as follows: "The defendant demands trial of the matter set forth in the plaintiff's declaration, and gives notice that he will show, under his plea of the general issue, a failure of consideration in this, to-wit: That the said contract declared on, if performed at all, on the part of the promisee, was not performed within a reasonable time, by reason of which the defendant received no benefit on its performance, in this, to-wit: At the date of said contract defendant was owner of and possessed of lands of great value, to-wit, of the value of five thousand dollars, which said lands it was contemplated by said contract would, by its performance within a reasonable time, be benefited and rendered of greater value to defendant, to-wit, by the performance of the promises on the part of said promisee. And by reason of the delay in the performance on the part of the said promisee said lands were not increased in value, and said defendant was not benefited." There was no denial under oath, by the defendant, of the execution of the paper writing, and therefore under the law it was admitted.

On the trial, the plaintiff proved by one Crane that the Toledo, Ann Arbor & Northern Railroad Company was thrown into bankruptcy on his petition August 13, 1875; that E. D. Kinne was appointed assignee thereof, and as such sold the assets of the company, including the paper sued upon, and that witness became the purchaser of said assets, including the writing sued upon, and that Kinne endorsed his name as assignee upon such writing. Plaintiff also proved a deed from said Kinne,

as assignee in bankruptcy of said railroad company to said Crane of the real estate, property and franchises of said company, including among other things about $40,000 in promises to pay money, conditioned upon the laying of the iron of the road-bed, which deed bore date October 6, 1875. Also a deed from said Crane to James M. Ashley of the same real estate, property and franchises bearing date June 26, 1877. The foregoing evidence was objected to for irrelevancy, and also because Kinne's title as assignee was not proved. This last objection was obviated afterwards by record evidence.

Plaintiff also put in evidence an authenticated copy of the declaration of incorporation of the Toledo & Ann Arbor Railroad Company, filed in the office of the Secretary of State November 23, 1877, and proved by James M. Ashley, Jr., that this company had fully completed and ironed the road from Toledo to Ann Arbor, and was operating it. Also by another witness that the completed road runs within a hundred rods of the Whiting hotel in Milan. Also that demand of payment had been made of defendant, which he had refused to make. The writing was then put in evidence, and plaintiff rested. Defendant then moved for a non-suit on the following grounds:

"1. That the declaration does not allege any assignment of the instrument declared on, and the evidence shows its right to recover as assignee only, if it shows right to recover at all.

2. That plaintiff's declaration does not aver an assignment from the Toledo, Ann Arbor & Northern Railroad Company, to the plaintiff, or to its assignor, and the evidence establishes its right to recover only under such assignment or assignments."

The third was substantially the same as the second. The justice denied the motion, and defendant offering no evidence the plaintiff had judgment.

Other objections were made in this court, but these were all to which the attention of the circuit court was called, and we can consider no others.

The fourth and sixth assignments of error cover the

same ground as the defendant's motion for a nonsuit before the justice, and they go no further. Their complaint is that the plaintiff was allowed to recover as assignee, without having alleged an assignment in his declaration. The complaint is therefore to the form of the plaintiff's pleading.

It is no new thing to have an objection of this sort to the pleadings in justices' courts raised before us. As the proceedings in those courts are commonly managed by parties unlearned in the law, defects in their allegations, when tested by the rules of art, are to be expected in almost every case which is at all complicated. If every such objection were disregarded, pleadings in justices' courts would, in effect, be dispensed with. Every plaintiff might allege as much or as little as he pleased, and recover without regard to his allegations. If every one were sustained which would be good if made to pleadings in courts of record, the parties in justices' courts would be driven to the employment of legal assistance in every case, and these courts, which are intended for the easy and inexpensive redress of wrongs not of great magnitude, would cease to accomplish their purpose. This court has adopted neither the one course nor the other. It has required the plaintiff in justices' court to apprise the defendant fairly of the cause of action relied upon, but when this has been done, the court has refused to regard formalities or technicalities. The object of the declaration is fully accomplished when the defendant is fairly apprised by it of the grounds of the plaintiff's claim, so that he need be under no misapprehension as to what matters are to be litigated on the trial. *Hurtford v. Holmes* 3 Mich. 460; *Daniels v. Clegg* 28 Mich. 32.

Does the declaration in this case accomplish this purpose? It certainly informs the defendant what he is sued upon. The contract is recited, and defendant is notified that claim is made against him upon it, and upon nothing else. The contract itself specifies the conditions of liability, so that defendant knows there can

be no recovery unless performance of these is proved. It is said the declaration does not count upon an assignment. But it counts upon a promise made to another, and upon which there could be no recovery except upon the proof of an assignment. The very claim to recover upon the paper was a claim as assignee, for it was only as assignee that plaintiff could have a right to it. Moreover, the paper was made payable to the railroad company or order, and there was an indorsement upon it by E. D. Kinne, as assignee, which fairly notified the defendant that Mr. Kinne claimed to have become entitled in some manner to order the payment to be made to a transferee. It is true this indorsement might have been more formally made; it might and ought to have assumed the form of an assignment, with such recitals as would have shown Mr. Kinne's authority; but the question now is whether the defendant was thrown off his guard or misled by any defects, and not whether the pleadings might have been made more perfect. We must judge of this upon all the facts, and not upon the face of the papers alone.

What the defendant ought to do in every case in which the declaration is supposed to be fatally defective, is to demur, and thereby bring the defect at once to the attention of the court, before parties have been put to trouble and expense in preparing for trial. No doubt he has a legal right to abstain from doing this, when the defects, in substance, are such as cannot by any intendment be supplied or overlooked, but this course is not conducive to justice, and courts will not countenance it any farther than they may feel compelled to do so. When the defendant fails to demur, he tacitly concedes the sufficiency of the declaration, and the court will hold him to this concession, whenever this can be done without probable injustice.

There was no demurrer in this case. When the evidence was put in, it appeared that Mr. Kinne was assignee in bankruptcy of the railroad company, and as such had

a right to assign the paper writing. Now a fact so notorious as must be the bankruptcy of a railroad company, we are not at liberty to suppose was unknown to one of its debtors. It is the most reasonable inference in the world that defendant was familiar with the facts, and that it was because he knew them that he refrained from demanding more perfect pleadings. It is the duty of the court to draw this inference, and to act upon it under the circumstances.

The fifth assignment of error is somewhat broader than the others. It complains of the admission of the paper writing in evidence, "there appearing upon the face to be no privity of contract between the plaintiff and defendant, since defendant was apprised, neither by suggestion or an averment, that plaintiff obtained as assignee, and because there was no averment and no evidence of ownership by plaintiff of said contract." Here is the same objection to the declaration, but there is also the further objection that plaintiff had not shown its ownership by evidence.

It has already been stated that there was a formal assignment by deed from Kinne as assignee to Crane, and from Crane to Ashley. The evidence of the assignment from Ashley to the plaintiff is to be found in the certificate of organization of the plaintiff as a corporation, which is signed by Ashley, and expressly declares that all the assets of the bankrupt corporation, so as aforesaid assigned to him, including the $40,000 conditional promises, "are declared to be and hereby become" the property of the new company. It can scarcely be pretended that Ashley, after this, could claim them.

But it is objected in this court that the plaintiff was never lawfully and legally organized. It was certainly organized, went on and completed the road, was operating it at the time the suit was tried, and still is operating it, so far as we know. If there was any usurpation of franchises here, the State should be left to complain of it. *Swartwout v. Michigan etc. R. R. Co.* 24 Mich. 389. There

was no pretense in the court below that plaintiff, as successor of the original company, had not complied with the conditions of the promise.

In our opinion the plaintiff in error has failed to point out any error in the rulings of the justice of the peace, and therefore the affirmance of the justice's judgment by the circuit court must be affirmed with costs.

MARSTON, C. J., and GRAVES, J., concurred.

CAMPBELL, J. (dissenting).   This case depends, so far as its merits go, on a very simple state of facts.   While I am not clear that there are not fatal defects of proof, yet I do not think it necessary to consider them.

In 1871 a corporation was in existence under the name of the Toledo, Ann Arbor & Northern Railroad Company. Plaintiff in error and several other persons signed papers which were severally obligatory, and in the following form: "For the purpose of promoting and aiding the construction of the Toledo, Ann Arbor & Northern Railroad, and in consideration of the benefits to be derived therefrom, I do hereby pledge and agree to pay to the order of the Toledo, Ann Arbor & Northern Railroad Company, the sum of $300, in instalments of 20 per cent on each eight miles of iron laid on the line of said road, except the last instalment, which shall be payable on the ironing of the said road from State line to Ann Arbor, and upon the further condition that said road shall be built within one-half mile of the Whiting Hotel in the village of Milan." This was dated August 21, 1871.  The corporation did considerable grading and other work, but finished no part of the railroad in Michigan, and laid no iron.   In the early part of 1874 it was prosecuted in bankruptcy in the eastern district of Michigan, and in June, 1874, E. D. Kinne became assignee in bankruptcy. There is no adequate proof of these proceedings, but enough appears to show the steps taken by the assignee.

In August, 1875, Kinne advertised for sale a list of assets which was made up as follows: (1) Of stock subscriptions, and agreements to take stock, and of promissory notes and judgments for stock subscriptions. (2) Of the road-bed and right of way. (3) Certain wood and

ties. (4) Certain promissory notes conditioned on placing the iron. (7) Certain land.

In September, 1875, Kinne sold the property set forth in this inventory or list to Benjamin P. Crane. The sale, as Mr. Kinne shows, and so it appears from the papers, covered only this list. The list undoubtedly contained enough to reach the paper now in suit.

Mr. Crane in 1877 transferred his purchase to James M. Ashley. On the twenty-third of November, 1877, Mr. Ashley made and filed with the Secretary of State a certificate as purchaser, undertaking to organize a new corporation, which is the plaintiff in this case, purporting to Lo made under Act No. 198 of 1873, article 1, section 2, and asserting the intention of exercising the functions of the older corporation.

The plaintiff corporation built a railroad from the State line to Ann Arbor, which, if built by the old company seasonably would have fulfilled the condition of the paper sued on.

The question therefore is whether the plaintiff, without any dealings with defendant, could assume the place of the old corporation, and by building this road compel Wilcox to pay his subscription, when nothing had occurred before the bankruptcy to earn any portion of it.

I do not see how the fact that this is a railroad agreement puts it on any different footing from any other conditional agreement. Any money actually earned by the old corporation could be assigned. But I do not think there is any rule of law which will authorize a party who has had an offer made to him of payment of a certain pi emium if he performs a certain condition, to substitute s )me one else in his stead, not as agent, but as a new p .incipal. No authority was produced for any such doctrine, and I do not believe such a principle is tenable. No doubt it is competent in some cases to merge an old corporation in a new one, and we have had several charters as well as general laws, under which the corporate identity has been kept up in a new name, and with larger as well as smaller powers. But

there can be no shifting of corporate identity except by statute, and I am not able to find any such statutory change here.  ·I think the case fails on any such claim. If there is no corporate identity the failure of the ˙old company and its bankruptcy before any money was earned put an end to the relations of the parties.    Such a liability could not be kept up indefinitely.    Interests might and probably did change when there was no assurance that the plaintiff in error's property could be benefited. The original road could claim no rights after seven years from its organization.    Comp. L. § 47.

It is plain that the bankrupt law favored no such doctrine.    There is nothing in that act which attempts to transfer to the assignee in bankruptcy any of the corporate franchises.    The power to exercise corporation franchises in a state, derived from the corporate charter, is preserved expressly so as to prevent dissolution.    The law, while it provided for disposing of corporate assets, distinctly declares that no discharge shall be granted to any corporation.    The bankrupt company must continue to exist as a corporation, and still exists for all purposes north of Ann Arbor.

There has never been any difficulty in obtaining corporate powers to make use of or finish a purchased road, as well as to build a new one.    By Act No. 190 of the laws of 1873, which is set up in the brief of counsel for the railroad as covering this case, a railroad company is allowed, under certain restrictions and conditions, to sell all˙ or part of its road to another existing incorporated company.    That· statute, however, does not reach sales in bankruptcy, but requires confirmatory action by the stockholders.    It requires the sale to be to an existing company, which thereby becomes liable to duties.    And· it does not merge the selling in the buying company.  1 Sess. L. 1873, page 478.

Act 198 of 1873, which is the general revisory act concerning railways, is the one under which the new company was actually organized.    It was done under section

2 of article 1. That section, however, applies by its terms, as the previous analogous statute of 1859 did (Laws 1859, p. 252), only to sales under mortgages and trust deeds, and allows purchasers of all and any specific part of a railroad to organize for the purpose of its management with the same powers as to such purchased property as were possessed by the mortgaging company. This statute does not purport to reach sales on execution or·in bankruptcy, and it does not refer to purchases of anything but a road or a part of one. It has no reference to general assets or personalty, and it does not purport to extinguish the old company or to merge it wholly or partially. The new company is not bound to any of the liabilities of the old one, or substituted in its place.

The statute makes no provision for incorporating by the purchaser's certificate, except as to the purchase of the road itself; and if the new corporation obtains any other assets, it is only on the footing of any other assignee, and with no greater or different interest from that which might be retained by a private purchaser without any attempt to incorporate.

I think the judgment against Wilcox should be reversed.