ROSINA R. DAY v. THE SPIRAL SPRINGS BUGGY CO.

*Estoppel from repudiating a contract as ultra vires.*

A corporation went beyond its powers in making contracts for speculation. The other party to one of the contracts refused to continue to carry it out, and as the corporation then refused to pay for merchandise already supplied, sued it on the quantum meruit. The corporation sought to recoup damages for non-performance. *Held,* that the plaintiff was not estopped from claiming that the contract was ultra vires; but as it was not immoral the plaintiff was entitled to recover for value.

Case made after judgment from Kent. (Montgomery, J.) May 1.—June 3.

ASSUMPSIT. Plaintiff had judgment. Affirmed.

*Edward Taggart* for plaintiff. For analogous contracts ultra vires, see *Bissell v. Railroad Company* 22 N. Y. 273; *Davis v. Railroad Company* 131 Mass. 258; recoupment is a cross-action and cannot be enforced against a plaintiff unless he would have to respond in an independent action : *Widrig v. Taggart* 51 Mich. 103; neither party to an executory contract that is ultra vires can enforce it against the other or recover damages for its breach : Green's Brice's Ultra Vires 607; *Harriman v. Bapt. Church* 63 Ga. 186; *Bank v. Jones* 95 N. Y. 115; though if wholly executed by one party the other cannot allege its invalidity : *Parish v. Wheeler* 22 N. Y. 508; *Asbury &c. Co. v. Richie* L. R. 7 App. Cas. H. of L. 653: 14 Eng. 42; *Thomas v. Railroad Company* 101 U. S. 83; *Oil Creek &c. Co. v. Penn. Trans. Co.* 83 Penn. St. 160; *Hitchcock v. Galveston* 96 U. S. 341; one who has delivered material under a contract only partly executed can recover

under a quantum valebat for what is actually furnished : *Chapman v. Dease* 34 Mich. 375 ; see *White v. Bank* 22 Pick. 181 ; *Dwight v. Palmer* 74 Ill. 295 ; *Morville v. Tract Society* 123 Mass. 129 ; *Lincoln v. Schwartz* 70 Ill. 134 ; *Taylor v. Renn* 79 Ill. 181.

*Maher & Felker* for appellee.    The doctrine of ultra vires cannot prevail when it would defeat the ends of justice or work a legal wrong : *Railway Co. v. McCarthy* 96 U. S. 267 ; *Whitney Arm Co. v. Barlow* 63 N. Y. 62 ; *Union Water Co. v. Murphy's Flat Fluming Co.* 22 Cal. 621 ; *Mona Railroad Co. v. Railroad Co.* 29 N. J. Eq. 542 ; *Rider Life Raft Co. v. Roach* (U. S.) 1884, 31 Alb. L. J. 253 ; *National Bank v. Case* 99 U. S. 633 ; *Harris v. Runnels* 12 How. 79 ; when a statute imposes a penalty upon an officer for solemnizing a marriage under certain circumstances, but does not declare the marriage void, the marriage is valid : *Milford v. Worcester* 7 Mass. 48 ; *Parton v. Hervey* 1 Gray 119 ; *King v. Birmingham* 8 B. & C. 29 ; when a corporation is incompetent by its charter to take title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object ; it is valid until assailed in a direct proceeding for that purpose : *Leazure v. Hillegas* 7 S. & R. 313 ; *Goundie v. Northampton Water Co.* 7 Penn. St. 233 ; *Runyan v. Coster* 14 Pet. 122 ; *Banks v. Poitiaux* 3 Rand. 136 ; *McIndoe v. St. Louis* 10 Mo. 577 ; an alien forbidden by the local law to acquire real estate may take and hold title until office found : *Fairfax's Devisee v. Hunter's Lessee* 7 Cranch 603 ; *Jackson v. Adams* 7 Wend. 367 ; the right of the sovereign to complain of corporate usurpation is not available to parties dealing with the corporation in respect to prohibited matters to enable them to repudiate their engagements : *National Bank v. Matthews* 98 U. S. 627 ; *Mott v. U. S. Trust & Loan Co.* 19 Barb. 568 ; *Silver Lake Bank v. North* 4 Johns. Ch. 370 ; *Whitney v. Wyman* 101 U. S. 392 ; *Spear v. Crawford* 14 Wend. 20 ; *Railroad Co. v. Ellerman* 105 U. S. 166 ; associates in a corporation de facto and those who have had dealings with it, are mutually estopped, the former from denying, and the latter from disputing the incorporation : *Swartwout v. Mich. Air Line R. R. Co.* 24 Mich. 389 ; *Merch. & Mfrs.' Bank v. Stone* 38 Mich. 782 ; *Wilcox v. Toledo & Ann Arbor R. R.* 43 Mich. 590 ; *Toledo & Ann Arbor R. R. v. Johnson* 55 Mich. 456 ; *Estey Mfg. Co. v. Runnels* id. 130.

COOLEY, C. J. This action is brought to recover the value of thirty-two tons of the article called "Excelsior," which had been received by the defendant of the plaintiff.

The defendant is a corporation, organized, as its articles of association state, " to purchase material for, and manufacture and sell carriages, and carriage and harness hardware ; also for the disposing of the right to manufacture on royalty the spiral buggy-spring, Smith's patent." In the manufacture of carriages excelsior is used for upholstering seats and backs, but for no other purpose. The place of business of defendant is Grand Rapids, Michigan.

It was shown on the trial that in April, 1883, defendant contracted with one Hulz, of Chicago, to sell and deliver to him in Chicago one hundred and seventy-four tons of excelsior, the delivery to be made at the rate of two car-loads a month, and the price to be fourteen dollars a ton. For the purposes of this contract defendant then bargained with the plaintiff that she should manufacture the requisite quantity of excelsior and deliver it on board cars or boat at Grand Rapids, billed to Hulz at Chicago. The price to be paid by defendant was eleven dollars and fifty cents a ton, which, after paying cost of transportation, would leave to defendant a profit on the sale to Hulz. It was known to plaintiff, when she contracted for the manufacture, that the defendant was not procuring the article for use in its business, but for the purpose of a sale at a profit in Chicago, where the defendant had no place of business, and the delivery to be made by her was to be made from time to time as required by the Hulz contract. The plaintiff was therefore fully aware that the contract of the defendant with her was purely one of speculation, and had no connection with its legitimate corporate business.

The excelsior was delivered by the plaintiff under the contract from time to time until about June 15, 1883, and was shipped to Chicago under defendant's contract with Hulz. At the time last mentioned the market value of the article had considerably advanced, and plaintiff declined to deliver any more at the price agreed upon. Part payment had been

made for the quantity received, and defendant refused to pay further unless plaintiff should go on in completion of her contract. This suit was accordingly instituted.

The claim of the plaintiff is that the contract she entered into with the defendant was void in law ; that therefore she was at no time under obligation to perform it ; that, in so far as the defendant has received excelsior from her, she is entitled to recover the value, not exceeding the price agreed upon ; and having shown that the value was equal to that price, she now claims to recover it in this suit. The defendant, on the other hand, insists that the plaintiff is estopped by the contract from disputing the capacity of the defendant to enter into it ; and that when she refuses to perform, she becomes liable in damages. These damages the defendant seeks to recover from the claim of the plaintiff.

The circuit judge was of opinion that the contract made by the defendant with Hulz, not being for a corporate purpose, was ultra vires and void, and the contract made with the plaintiff for the purpose of meeting its requirements was void also. For the excelsior actually received by the defendant the plaintiff was held entitled to recover, as if the void contract had not been entered into ; but a claim to recoupment must necessarily assume the validity of the contract, and was therefore inadmissible. The judge, therefore, gave judgment for the plaintiff for the value of what had been received, deducting such payments as had been made. The defendant brings error.

It is scarcely denied in this Court that the contract of the defendant on which it now relies was ultra vires. Its corporate purposes were specified in its articles, and it was without legal power to go beyond them. The contract was one of speculative dealing, and was as much foreign to the purposes of corporate organization as would have been a contract for dealing in grain on the produce exchange, or in shares in the stock market. The State had not by law consented that its manufacturing corporations should be at liberty to make such contracts, but for reasons of sound public policy had withheld from them the power to do so. Neither

had the corporators of the defendant consented that their interests might be put in jeopardy by such dealings.

But defendant relies here, as it did in the court below, upon the plaintiff's being estopped by her contract from raising the question of ultra vires. She has certainly admitted the power of the defendant to make the contract, and if the elements of an estoppel are to be found in this mere admission, or in this admission coupled with such action as has taken place under it, then the defendant should be entitled to recoupment.

There are some decisions which give plausibility to the position of the defendant, but we know of none that is adequate to the exigencies of this case. Parties entering into contracts with an association of persons, who are de facto exercising corporate powers, are not suffered to dispute the corporate authority which their contracts admit: *Swartwout v. Mich. Air-line R. Co.* 24 Mich. 389; *Wilcox v. Toledo &c. R. Co.* 43 Mich. 584; but this is on the principle that a usurpation of corporate authority concerns only the State, and it is supposed the State will move on its own behalf to have the usurpation punished or restrained when it is found to exist, if the occasion seems to call for it. The case before us is not one of that description. The defendant's possession of corporate powers is conceded, and though the particular act was done without authority, the State was not the only party interested in questioning it. Every stockholder was entitled in his own interest to insist on its being repudiated, for he had not consented to put his share of the capital at the risk of any such venture. There are some cases, also, in which parties by false representations have induced others to act upon invalid contracts as if they were valid, and to make payments, deliver property, or otherwise change their positions in reliance upon the contracts, under such circumstances that nothing but the enforcement of the contracts will do complete justice: and in such cases the doctrine of estoppel may well be applied. But this is not such a case. No false representations are alleged, and it is not disputed that all parties were fully aware of all the facts. They must

therefore be supposed to have understood that the contract in its inception was ultra vires. And the power on the part of such a corporation to enter into contracts of speculation, being withheld on reasons of public policy, for the protection of shareholders and the general good of the community, the act neither of one party nor of both in entering into it can work an estoppel against setting up the invalidity. A rule of law established for the public good cannot be thus defeated. A corporation cannot, by the mere act of individuals, be given a power which the state for general reasons has withheld from it. *Pennsylvania &c. Nav. Co. v. Dandridge* 8 Gill & J. 248, 319.

Parties may also be estopped, in some cases, from disputing the validity of a corporate contract when it has been fully performed on one side, and when nothing short of enforcement will do justice. To quote the language of Comstock, C. J., in *Parish v. Wheeler* 22 N. Y. 494, 508: "the executed dealings of corporations must be allowed to stand for and against both the parties, when the plainest rules of good faith so require." But this is not such a case. The contract has only been performed in part. The defendant has received a portion of the property bargained for, and we may justly assume that what has been received has passed into the hands of Hulz and been paid for, so that the defendant will lose nothing but the anticipated profits on the remainder if the contract is not enforced in its favor. Those profits it had no right at any time to count upon; and, in contemplation of law, there can be no injustice in depriving it of profits which the law would not permit it to bargain for. No valid ground for estoppel is therefore found to exist in the case.

The defendant, then, if the plaintiff has established a valid demand, is not entitled to recoup damages for refusal to make complete performance, because to allow recoupment would be indirectly to enforce the contract.

Whether the plaintiff is entitled to recover for the goods delivered and not paid for is the remaining question. The defendant has had the goods, and there is no want of equity

in requiring it to make payment.   They were delivered under a contract which bound neither party, and though the plaintiff is the party who now refuses to go on with it, the defendant was at liberty to do the same, and we cannot know that it would not have done so if the change in market value had been such as to make it for its interest.   But, however that may be, if the defendant pays for the property received, the parties will have justice meted out to them as nearly as is now possible.

It is to be observed that the contract, though void in law, involved no element of criminality, and nothing of an immoral nature.   The case is not, therefore, one in which the law will leave the parties without redress for the consequences of criminal or immoral action.   The plaintiff had a right to sell her manufacture, and to be paid for it; the defendant has received something of value from her, and there is manifest equity in its being required to make payment, notwithstanding it exceeded its powers in the purchase.

The cases of *Pratt v. Short* 79 N. Y. 437; *Northwestern Union Packet Co. v. Shaw* 37 Wis. 655; *Harriman v. Baptist Church* 63 Ga. 186, are in point, and fully sustain the judgment.   The principle involved is considered at length in *Whitney Arms Co. v. Barlow* 63 N. Y. 62, and is supported by *Thomas v. Railroad Co.* 101 U. S. 71; *In re Cork & Y. Ry. Co.* L. R. 4 Ch. App. 748; *In re National &c. Society* L. R. 5 Ch. App. 309; and many other cases.   No doubt it results in a degree of hardship in some cases, when a party fails to obtain all that has been bargained for; but the loss of anticipated advantages, as an incident to unauthorized dealings, is one for which the parties themselves are responsible, not the law.

The judgment must be affirmed.

· The other Justices concurred.