## CITY OF NILES *v.* BENTON HARBOR-ST. JOE RAILWAY & LIGHT CO.

1. CORPORATIONS— CONSOLIDATION — STREET RAILROADS—ACTION AGAINST—ESTOPPEL.

    Where a street-railroad company, formed by the consolidation of two previously existing companies, was sued upon a liability of one of the constituent companies, it could not urge the invalidity of its own organization.

2. STREET RAILROADS—CONTRACTS—ULTRA VIRES.

    Where the charter of a street-railroad company authorized it to build from the State line to a certain city, and to make any connections or extend any spurs into any part of the county in which the city is situated and certain other counties, a contract by which the company acquired franchise rights in another city of the same county was not ultra vires.

3. PLEADING — SPECIAL DEFENSE — ULTRA VIRES — NECESSITY OF NOTICE.

    In a suit against a street-railroad company, formed by the consolidation of two previously existing companies, upon a contract made by one of the constituent companies, the defense that the contract was ultra vires is not available unless specially pleaded as required by Circuit Court Rule 7.

4. NOVATION —WHAT CONSTITUTES — STREET RAILROADS — FRANCHISES.

    A street-railroad company is not relieved of its obligation to pay an agreed portion of the cost of a street pavement already laid, as provided by the ordinance granting its franchise, though a section of the ordinance obligates the company to diligently prosecute its application to the railroad commissioner for permission to cross the tracks of a steam railroad upon that street at grade, and provides that unless that permission is obtained the ordinance shall be void at the option of the city; a previously existing company, liable for the cost of the paving, having been released as a part of the consideration for the granting of the franchise.

5. STREET RAILROADS—FRANCHISES—COST OF PAVING—CONSTRUCTION.

    If the obligation of a street-railroad company, imposed by its

franchise, to pay a part of the cost of a street pavement al-
ready laid, was conditional upon its obtaining permission of
the railroad commissioner to cross the tracks of a steam rail-
road at grade, as provided by another section of its franchise,
it could not defeat an action for the agreed amount without
a showing of diligence in prosecuting its application, and a
refusal.

6. SAME—CONDITIONAL FRANCHISE.

Under a franchise providing that upon the nonperformance of
certain conditions the franchise shall be void, at the option
of the city, the grantee has the right to build, notwithstand-
ing nonperformance of the conditions, in the absence of
action by the city in the exercise of its option, and the com-
pany is not relieved of any of the obligations imposed by the
accepted franchise.

7. SAME—FRANCHISE—ACCEPTANCE—SUFFICIENCY.

A written acceptance of a street-railroad franchise, signed in
the name of the company, by its president and secretary,
with the seal of the company attached, is prima facie a good
acceptance.

Error to Berrien; Des Voignes, J., presiding. Sub-
mitted May 12, 1908. (Docket No. 47.) Decided Octo-
ber 5, 1908.

Assumpsit by the city of Niles against the Benton
Harbor-St. Joe Railway & Light Company for an amount
due for certain paving. There was judgment for plain-
tiff, and defendant brings error. Affirmed.

*Humphrey S. Gray* and *M. L. Howell*, for appellant.

*J. J. Van Riper*, City Attorney, *G. M. Valentine*,
and *Edson B. Valentine*, for appellee.

This case was tried before the court without a jury.
The court made a finding of facts and of law as follows:

"On the 30th day of March, 1905, the St. Joe River
Traction Company, a corporation, organized and existing
under Act No. 35, Laws 1867, applied to the city council
of Niles for an ordinance granting to it, its successors,
assigns, lessees, etc., to construct, maintain, own, and

operate a street railway in said city of Niles. On said 30th day of March, 1905, an ordinance granting such franchise was duly passed by the city council, and among other provisions contained in said ordinance appeared the following:

" 'SEC. 3. Inasmuch as Front street from Main street to the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, is now paved with brick and the South Bend & Southern Michigan Railroad Company has agreed to pay a part of the expense thereof, which amount has been heretofore determined and agreed upon, and whereas, said South Bend & Southern Michigan Railway Company has now surrendered all rights in and to said street, grantee agrees that it will pay four-fifths of the entire amount so agreed upon to be paid by the said South Bend & Southern Michigan Railway Company, being the sum of, to wit: three thousand dollars, and agrees to pay the same with interest in three equal annual installments, on July 1st, of each of the years A. D. 1905, A. D. 1906, and A. D. 1907.'

" On the 21st day of April, 1905, the St. Joe River Traction Company, by Henry C. Mason, its vice president, and Humphrey S. Gray, its secretary, filed an acceptance of said ordinance and franchise in writing, thereby obligating itself to pay to the city of Niles the said four-fifths of the entire amount for which the said South Bend & Southern Michigan Railway Company was to pay for its share of the paving of said Front street, as provided in section 3 of the ordinance just above referred to. That neither the sum so stipulated and provided for in said ordinance, nor any part thereof, has been paid by the St. Joe River Traction Company. That on the 25th day of January, 1906, an agreement of consolidation and merger of the St. Joe River Traction Company with the Southern Michigan Light & Power Company, under the name of Benton Harbor-St. Joe Railway & Light Company, was filed and recorded within the office of the secretary of State at Lansing, Mich., by virtue of Act No. 197, Pub. Acts 1891, and thereafter the two corporations formed a single corporation, and from that time to this they have continued to operate said railway under said merger and consolidation, into a single and new corporation, under the laws of the State of Michigan. That the St. Joe River Traction Company ceased to have a legal existence, and was merged into said defendant company, together with all its capital stock, franchises, etc., appertaining

thereto, together with all the properties and rights of said corporation, real, personal, or mixed, on or about January 25, 1906. Under the statute permitting the merger and consolidation of the constituent companies into the defendant corporation, as hereinbefore set forth, the defendant assumed and became liable to pay all the debts, liabilities, and duties of said St. Joe River Traction Company to the same extent as if such liability had been originally incurred by it. * * *

" It therefore follows that the plaintiff is entitled to recover in this action for the payments due on July 1, 1905, and July 1, 1906, as set forth in their declaration, with interest to be computed at the rate of 5 per cent. per annum instead of 6 per cent. as claimed in plaintiff's computation, and a judgment may be so entered accordingly, with costs to be taxed against the defendant."

Counsel for defendant filed 38 exceptions, some to the finding of facts, some to the finding of law, and some to the refusal to find other facts. There are 31 assignments of error.

GRANT, C. J. (*after stating the facts*). The most important assignments of error are grouped by counsel for defendant under two heads.

1. It is insisted that the contract between the City of Niles and the St. Joe River Traction Company was ultra vires, both as to that company and the consolidated company, and also that the consolidation was not authorized by the statutes of Michigan then in force. Defendant acquired, by the act of consolidation, all the franchises, rights, and property of the St. Joe River Traction Company, and thereby became obligated to pay all its debts and liabilities. It cannot in this proceeding assert the invalidity of its own organization. *Shadford* v. *Railway*, 130 Mich. 300. The contract between the city and the St. Joe River Traction Company was not ultra vires. The precise point urged is that under its charter it had no authority to extend its road into the city of Niles. Its declared purpose in its charter is not alone to construct a street railway from the State line between Michigan and

Indiana to the city of Benton Harbor, but also to make any connections or extend any spurs into any part of that county and certain other counties. The city of Niles is situated in Berrien county. Furthermore, this defense is not available, as no notice was given of it under Circuit Court Rule 7. *Wachsmuth* v. *National Bank*, 96 Mich. 427 (21 L. R. A. 278).

2. It is insisted that the contract with the St. Joe River Traction Company depended for its validity upon the consent of the railroad commissioner to a grade crossing over the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and, as this was not obtained, the contract became impossible of performance, without consideration, and void. That provision of the ordinance upon this subject is as follows:

"Grantee agrees to prosecute diligently its application to secure a grade crossing over the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company on Front street; and it is agreed that if the right to make such crossing is not granted and the tracks on Front street not constructed as above required within one year from the acceptance hereof, then all rights under this ordinance shall cease, if the council of the city of Niles so direct, and this ordinance shall terminate and be void."

There are three answers to this claim:

(a) The South Bend & Southern Michigan Railway Company, in its contract with the city of Niles, had agreed to pay a certain part of the cost of paving the street as a consideration for the granting of a franchise. The street had been paved, the amount agreed upon, and that company had already paid two-fifths of the amount. The agreement by the city to release the South Bend & Southern Michigan Railway Company from further payment, and on the part of that company to surrender its franchise in Front street, the granting of the franchise to the St. Joe River Traction Company in the street, and the assumption of the obligation on the part of the traction company to pay this portion of the payment, appear

to be a part of the same transaction. The obligation on the part of the South Bend Company was transferred to, and assumed by, the traction company. It is a fair presumption from this record that the city released the one upon the assumption of the obligation by the other. There was therefore a complete novation. Section 3 of the franchise to the St. Joe Traction Company reads as follows:

"Inasmuch as Front street from Main street to the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company is now paved with brick, and the South Bend & Southern Michigan Railway Company had agreed to pay a part of the expense thereof, which amount has been heretofore determined and agreed upon, and whereas said South Bend & Southern Michigan Railway Company has now surrendered all rights in and to said street, grantee agrees that it will pay four-fifths of the entire amount so agreed to be paid by said South Bend and Southern Michigan Railway Company and agrees to pay the same with interest in three equal annual installments on July 1, of each year A. D. 1905, A. D. 1906, and A. D. 1907."

The agreement to pay was unconditional, and did not depend upon the future construction of a street railway upon Front street, or securing the right to cross the railroad track at grade. The South Bend Company had made an absolute agreement to pay a certain amount, and had paid a part as agreed. The traction company agreed to pay four-fifths of this expense. Why it was four-fifths instead of three-fifths is not explained by the record. It may have been a mistake in writing four-fifths instead of three-fifths, but we have no evidence by which to determine that there was a mistake.

(*b*) If the payment of this amount was conditional upon obtaining permission from the proper authorities to cross the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company on Front street at grade, and the failure to obtain such permission, this record, as the learned circuit judge found, fails to show such diligent

prosecution. All the record shows is a petition to the railway commissioner asking permission, and that a time and place be named, and notice thereof "given to your petitioner when and where all parties interested in such crossing may be heard." There is no evidence that there was any hearing or any production of evidence or any denial on the part of the commissioner. The court properly found "that no proof has been shown denying the right to make the crossing." The burden of proof was upon the St. Joe River Traction Company and its assignee to show that it had performed the contract. The record only shows that such permission was not obtained.

(c) The agreement was not that, upon inability to obtain a crossing at grade, the contract should be absolutely void. The court found that permission to cross the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company was not necessary to make the franchise valuable, because the track could pass under the Michigan Central Railroad track without crossing the other, and that therefore there was no physical impossibility of performance. We are not concerned with the reasons why they did not agree that the contract should be absolutely terminated upon the failure, after diligent prosecution, to obtain a grade crossing. It is sufficient to know that they did not make such a contract, but did agree that the failure to obtain this crossing and to construct the tracks within the time prescribed should operate to make the contract void only at the option of the city of Niles. Until the city has exercised that option the defendant, as assignee of the traction company, retains its right to construct a railway thereon. It placed the sole power to declare the contract ended in the city of Niles. I see no objection to the validity of this provision.

3. It is urged that the court should have found that there was no acceptance of the ordinance shown by the St. Joe River Traction Company. A written acceptance was served upon the city. It was signed in the name of the St. Joe River Traction Company, by its president and sec-

retary, and the seal of the corporation attached. This made a prima facie case of acceptance. *Kirkpatrick* v. *Eastern Milling & Export Co.*, 135 Fed. 144.

4. The errors assigned, upon the omission to find certain facts, become immaterial to consider, in view of the fact that they arise upon the articles of association of the various companies which were introduced in evidence, were a part of the record, and have been considered by us, as they were by the circuit judge, in arriving at our conclusions. We see no occasion to discuss the question further. No material findings were made without evidence to support them.

The judgment is affirmed.

MONTGOMERY and HOOKER, JJ., concurred.

OSTRANDER, J. I concur in the result; as to the second point upon the first ground—(*a*)—stated in the opinion of Chief Justice GRANT.

BLAIR, J., concurred in the result.