BLACKWOOD *v*. LANSING CHAMBER OF COMMERCE.

1. PLEADING—CORPORATIONS—ULTRA VIRES—NOTICE OF DEFENSE.
   It is necessary to give special notice of the defense that a contract of a corporation is *ultra vires*.

2. CORPORATIONS—CONTRACTS—ESTOPPEL—ULTRA VIRES.
   Defendant, a chamber of commerce, organized under 3 Comp. Laws, § 6892 (3 How. Stat. [2d Ed.] § 7302), is estopped to defend an action for breach of a contract to advertise and hold a course of Chautauqua entertainments on the ground of *ultra vires;* the contract being legal, and the purpose not contrary to public policy, plaintiff could recover for its breach.

Error to Ingham; Collingwood, J. Submitted April 9, 1913. (Docket No. 19.) Decided January 5, 1914.

Assumpsit by Samuel E. Blackwood against the Lansing Chamber of Commerce for breach of a special contract. Judgment for defendant upon a directed verdict. Plaintiff brings error. Reversed.

*Carl H. McLean (Parm C. Gilbert,* of counsel), for appellant.

*L. B. Gardner,* for appellee.

BIRD, J. The plaintiff, who was a vendor of talent for local Chautauquas, entered into a written agreement with defendant in November, 1909, to hold a Chautauqua in Lansing in the summer of 1910, and to furnish the speakers and entertainers therefor. The contract was as follows:

"This contract entered into the 18th day of November, 1909, by and between S. E. Blackwood, representing the Redpath-Slayton Company of Chicago, party of the first part, and the Lansing Business

Men's Association, of the second part, witnesseth: That said party of the first part, for and in consideration of the sale of five hundred (500) season tickets, at two dollars each, by said party of the second part, agrees to stand liable for the payment of all necessary expenses, and pay any deficit for the successful carrying on of a Chautauqua, to be held in Lansing, in the summer of 1910, the dates and program for said Chautauqua to be mutually agreed upon. Said party of the second part to proceed with due diligence to sell the five hundred (500) tickets on or before April 1, 1910. After which date said party of the first part is to undertake to sell additional season tickets.

"It is further understood and agreed by the parties hereunto that the net profits accruing in this enterprise are to be divided between them.

"It is further understood that the total expense of this enterprise is not to exceed the sum of twenty-two hundred dollars ($2,200.00)."

Following the making of this contract, the plaintiff met with a committee appointed by defendant, and arranged for the dates of holding the Chautauqua, and also agreed upon the speakers and entertainers to be secured by plaintiff. It is the claim of plaintiff that he carried out his part of the contract, but that the defendant failed to carry out its part, in that it failed to sell the 500 tickets at $2 each, which the contract stipulated it should sell, and by reason of such failure the Chautauqua was a failure financially, and in consequence thereof he was greatly damaged. To recover this loss, he brought this suit against the defendant, and filed a declaration counting upon the breach of the contract, with the common counts added. The defendant pleaded the general issue, and gave notice that, if the defendant ever became obligated as claimed by plaintiff, it compromised and settled for its delinquency by moving plaintiff's tent, in which the Chautauqua was being held, from the East Side Park in the city of Lansing to the Third Ward Park, after the Chautauqua was under way.

The case was tried along the lines raised by the pleadings, and, when the proofs were closed, the defendant raised the question, and asked for a directed verdict, on the ground that the contract was one which the defendant corporation had no authority to make, and was therefore *ultra vires*. The trial court took this view of the contract, and accordingly directed a verdict as requested. Whether the action of the trial court was right in so doing is the principal question before us for solution.

1. The plaintiff raises the question that the trial court was in error in allowing the defense of *ultra vires* to be made over his objection that it was not raised by the pleadings. It has been several times held by this court that the defense of *ultra vires* is a special defense, and is not available under the general issue, but must be specially pleaded. Circuit Court Rule 7; *Citizens' Sav. Bank* v. *Brass Works,* 155 Mich. 3 (118 N. W. 507); *City of Niles* v. *Light Co.,* 154 Mich. 378 (117 N. W. 937); *Wachsmuth* v. *National Bank,* 96 Mich. 426 (56 N. W. 9, 21 L. R. A. 278).

Under the practice as established by the rule and these authorities, we think the objection was well taken, and that that defense was not open to the defendant under the pleadings as they were framed.

2. Defendant was incorporated under section 6892 *et seq.,* 2 Comp. Laws (3 How. Stat. [2d Ed.] § 7302). It adopted a constitution, in which was set out the object of the corporation. It is defendant's claim that, under the statute and its constitution, it had no authority to make a contract for such a purpose. The contract appears to have been made in good faith by both parties, and it further appears to have been carried out by plaintiff. There was nothing criminal, immoral, nor against public policy in promoting a Chautauqua which would contribute to the intellectual and moral welfare of the people. For defendant to

refuse to discharge its obligations growing out of the contract, when plaintiff had in good faith discharged his, would work an injustice. Under such a state of facts, if it be true, as defendant contends, that the contract is such a one as it had no power to make, it ought to be and is estopped from raising the defense of *ultra vires*. The doctrine applicable to like situations has been stated as follows:

"Except in cases where the rights of the public are involved, the plea of *ultra vires*, whether interposed for or against a corporation, will not be allowed to prevail when it will not advance justice, but will accomplish a legal wrong. * * * The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it." 10 Cyc. p. 1156.

See, also, *Day* v. *Buggy Co.*, 57 Mich. 146 (23 N. W. 628, 58 Am. Rep. 352); *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 550 (51 N. W. 641, 30 Am. St. Rep. 454); *Dewey* v. *Railway Co.*, 91 Mich. 351 (51 N. W. 1063); *Butterworth & Lowe* v. *Milling Co.*, 115 Mich. 1 (72 N. W. 990); *Rehberg* v. *Surety Co.*, 131 Mich. 135 (91 N. W. 132); *Timm* v. *Brewing Co.*, 160 Mich. 371 (125 N. W. 357, 27 L. R. A. [N. S.] 186).

We think the trial court was in error in directing a verdict for the defendant on the ground stated. The questions of fact which the testimony raised should have been submitted to the jury. The judgment will be reversed, and a new trial ordered.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.