## August Kortylak, Appellee, v. Johnston City Building and Loan Association of Johnston City, Appellant.

Opinion filed January 4, 1935.  Rehearing denied February 25, 1935.

David A. Warford, for appellant.

D. L. Duty, of Marion, for appellee.

Mr. Presiding Justice Edwards delivered the opinion of the court.

In 1921, appellee became the owner of 10 shares of the capital stock of appellant, Johnston City Building and Loan Association, each of the par value of $100, and represented by a stock certificate. On May 1, 1927, having paid up in full for such shares, he approached the appellant, through its secretary, and asked for the payment of the $1,000 due on the certificate, as a result of which there was indorsed upon the back of the certificate the following: "This is to certify that this certificate is fully paid and matured, and will draw interest at the rate of 6 per cent per annum until paid, and is payable on demand of the owner or of the undersigned. Dated this 1st day of May, A. D. 1927. Johnston City Building & Loan Assn. By D. R. Kenshalo, Secy." Thereafter, four instalments of interest were paid thereon, following which the appellant, becoming financially unstable, made no further payments, and in 1931 went into liquidation.

The conversation between appellee (a foreigner who speaks brokenly) and the secretary, at the time when the indorsement was made, as told by the former, is substantially as follows:

"Kenshalo say, 'Hello, August; you got thousand dollars coming, but we no got. You want to loan it to us?' I say, 'Well, I no need the money. I loan it.' He say, 'Well, we pay you six per cent.' I say, 'Give me note.' He say, 'You no need note. I write on back of certificate. That's just as good.' "

The secretary testified, concerning the transaction, that appellant did not have the money; that he (appellee) said he did not want the money, and that he would leave it; and that he told appellee that he would indorse the certificate so it would draw interest. On

cross-examination he was asked whether or not he said the indorsement would be as good as a note, and he replied, ''I don't know''; further stating that he did not recall that appellee asked for a note, but was almost positive that he did not. He further testified that the association wanted the money that was represented by the stock; that appellant, at the time, did not have the money to pay it, and that it was willing to give some kind of security and pay interest; also, that the record did not show any resolution of the board of directors authorizing him to make a loan for appellant.

Appellee sued in assumpsit to recover upon the alleged agreement. There was a trial by jury, a verdict for $1,200, and judgment thereon; from which this appeal has been perfected.

The action of the court, in permitting appellee to testify to the conversation with the secretary, is claimed as error for the reason that the indorsement in writing constituted the agreement, and that it could not be varied by parol testimony.

As has been stated, appellant called its secretary, who testified fully as to this conversation. Where a party offers similar testimony to that to which it objected when offered by the opposing party, it is in no position to claim error, as a party cannot complain of an error which it also committed; as held in *Bogart v. Brazee*, 331 Ill. 160, 181; *Supolski v. Ferguson & Lange Foundry Co.*, 272 Ill. 82, 89; *Kuhn v. Eppstein*, 239 Ill. 555; *Huling v. Century Publishing & Engraving Co.*, 108 Ill. App. 549. And for the reason as stated in *Kuhn v. Eppstein, supra:* ''If the evidence for the appellee was incompetent, so was that for the appellants, and they ought not to be heard to complain that evidence of the same character which they offered was not competent.''

On page 1 of its reply brief and argument, appellant states: ''As was pointed out in defendant's original brief, the question of the relationship of plaintiff

and defendant after the indorsement was placed on the stock certificate, whether stockholder and corporation or debtor and creditor, is the only question in the case''; and we shall so regard it.

At the time in question, Cahill's St. ch. 32, ¶ 386 (ch. 32, Smith-Hurd R. S. 1931) provided that when such shares matured, ''with the consent of the directors, there may be issued in lieu of such shares, matured stock certificates upon which the interest to be paid shall not exceed the actual net earnings of the association, payable at such times and in such manner as may be expressed in said certificate.''

Appellant insists that in view of such statute, it is immaterial that the indorsement provided for a straight rate of interest, with no provision limiting the interest to be paid out of the net earnings, as the section requires. Whether appellant was authorized to bind itself, by such indorsement, is not before us for consideration, as the want of power to so act, or, in other words, that same was ultra vires the powers of the association, could only be availed of by appellant's specially pleading such as a defense. *Lake Street El. R. Co. v. Carmichael,* 184 Ill. 348, 351, affirming 82 Ill. App. 344; *McLean Co. v. Sidebottom,* 277 Mass. 158, 178 N. E. 284; *Dyer v. Broadway Central Bank,* 252 N. Y. 430, 169 N. E. 635; *Blackwood v. Lansing Chamber of Commerce,* 178 Mich. 321, 144 N. W. 823; *City of Williston v. Ludowese,* 53 N. D. 797, 208 N. W. 82; *Chicago Pneumatic Tool Co. v. Munsell,* 107 Ill. App. 344. No such plea having been filed, no issue thereon was raised, and the power to so act cannot be questioned.

Appellee, by replication, set up a contract of borrowing of said sum by appellant, acting through its secretary; asserting that thereby the relationship of stockholder and corporation ceased, and that of debtor and creditor was created. No rejoinder was filed to the replication, nor was the want of authority of ap-

pellant to enter into such contract, raised by any appropriate pleading. As we have seen, such act, if ultra vires, should have been specially pleaded in order to raise the question as a defense in the case. This was not done; hence, whether or not appellant had the power to enter into the contract, acting through its secretary, is not in issue.

Paragraph 2 of section 35 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 163, provides that the allegation of the execution of any written instrument shall be deemed to be admitted, unless denied by a pleading verified by oath, or unless such verification is excused by the court. Section 52 of the former Practice Act contained a like requirement. Hence, regardless of which Practice Act governs the pleadings of the instant case, the effect is the same.

The replication averred that the written indorsement was the contract, and its execution was not denied by any verified pleading.

In *City of Chicago v. Peck*, 196 Ill. 260, where the authority of the mayor to enter into a written lease in the name of the city was called into question, and no verified plea denying its execution was filed, the court said, on page 262: "Where an instrument purports to be executed by an agent, the authority of the agent is a material part of the execution, and to admit the execution is to admit all the essentials to the execution. To require proof of the execution is to require proof of the authority to execute the instrument, and if the execution is denied by a verified plea, the authority of the agent constitutes an essential part of the plaintiff's proof. A corporation necessarily acts by its agents, and if the execution of the instrument is not denied by verified plea, it is not necessary to prove the authority of the agent. *Delahay v. Clement*, 2 Scam. 575. The failure to deny the execution of the lease by verified plea was an admission that it was executed by the city, necessarily including

the fact that the mayor, acting for the city, had authority to execute it. It was not error to admit the lease in evidence without proof of its execution or of the authority of the mayor to execute it.'' And to the same effect are *Schuyler County v. Missouri Bridge & Iron Co.*, 256 Ill. 348, and *Walsh v. Marvel*, 130 Ill. App. 305, 307, 308.

The written contract of indorsement was alleged to be the act of appellant, acting through its secretary, and not that of the secretary as an individual. If the secretary had no authority to so execute, then no such contract was entered into by appellant. Hence, to dispute the authority of the agent to so act involved the execution of the contract, which could only be questioned by a verified pleading denying such execution. Same was not so pleaded, nor was it excused by the court; therefore appellant, under the statute, has admitted that the secretary had authority to execute the contract of indorsement, in the name of, and for, appellant. If the latter had wished to raise the defense that the directors had not conferred power upon the secretary to enter into such contract of borrowing, it should have pleaded such fact, as the statute requires.

The testimony of the secretary was to the effect that when such certificates matured, it was the custom and practice of appellant, with the knowledge of the directors, and acquiesced in by them, to make indorsements thereon, as was done in the case of appellee; that interest was paid thereon, and in some instances payments were made on the principal sum represented by the certificate; that, at times, notes were executed by appellant, to order of the holders of the certificates, as in the case of the Citizens State Bank aggregating $11,000, to H. V. Ferrell in the sum of $763.20, and to Leo Baker for $1,000, the notes being signed by the president and secretary, and those just mentioned being executed in 1927, about or near the time of the transaction with appellee.

That appellee desired a note, or its equivalent, and was told by the secretary that the indorsement amounted to such, is evident from the proof. Nor can it be seriously doubted that had appellee insisted upon a formal note being given him, appellant would have executed same; as evidenced by the giving of notes to others, similarly situated, about this time. Appellee no doubt believed the indorsement was what the secretary told him it was,—the same as a note.

It is claimed that appellee is precluded from claiming such to be the case by the fact that in 1931 he attended a stockholders' meeting, held for the purpose of considering the voluntary liquidation of appellant; that at such meeting, the number of shares owned by each stockholder was read off; that the shares represented by the certificate in question were contained in the number credited to appellee, and read off at the time, and that the latter made no objection thereto.

We do not so understand the evidence. Gordon Pillow, who at the time was secretary, testified that appellee was present; that "he was mumbling something." "I understood him to say, 'I want my money.' " This certainly does not prove that he regarded himself as still a stockholder, but on the contrary indicates that he understood he was a creditor who wished to be paid. It is not likely that appellee, for the reasons mentioned, fully understood the purport of the meeting, but was present for the purpose of demanding his money.

We think the jury were warranted in finding that the evidence established that the transaction between appellee and appellant, acting through the secretary, Kenshalo, was understood by both to be a loan to appellant of the moneys represented by the certificate, drawing interest, and payable on demand. Kenshalo testified that the association did not have the money to pay it, and was willing to give some kind of security therefor, and to pay interest.

If appellee were to remain a stockholder, why give him security? He would not be entitled to same, and no reason existed for so doing. The giving of security, as universally understood, is to insure the payment of a debt, or the performance of an act, and in a situation such as this, can only mean that a debt exists; hence, it is obvious that the secretary understood, as did appellee, that he had ceased to be a stockholder, and had become a creditor. Nor did the retention of the certificate carry with it, necessarily, a contrary inference. Appellant was not observing the statute, or its by-laws, in dealing with the holders of matured stock, and appellee, unlearned in business matters, was justified in trusting to the word of the secretary that the indorsement was the same as a note.

Moreover, appellant did not file a motion for a new trial; hence cannot question the sufficiency of the evidence to sustain the verdict. *Armour v. Pennsylvania R. Co.*, 353 Ill. 575; *Yarber v. Chicago & Alton Ry. Co.*, 235 Ill. 589; *People v. Moritz*, 238 Ill. 494; *Law v. Fletcher*, 84 Ill. 45.

It is contended that the court erred in denying appellant's motion for a directed verdict, made at the close of all the evidence. As previously stated, we think there was ample proof tending to sustain appellee's case, and where this is true, such a motion must be overruled; as said in *Libby, McNeill & Libby v. Cook*, 222 Ill. 206, 212: "If, however, there is in the record any evidence from which, if it stood alone, the jury could, 'without acting unreasonably in the eye of the law,' find that all the material averments of the declaration had been proven, then the cause should be submitted to the jury." We are of opinion that the motion was properly denied.

Appellant insists that the court erred in failing to incorporate in its charge certain suggestions made by it. No specific reason is assigned, nor is any argu-

ment made, as to why the court erred in refusing any one of the suggestions. It appears to be the settled law of this State that alleged errors of instructions, given or refused, will not be considered on appeal, where the appellant fails to point out in his brief in what respect there was error. *Spring Valley Coal Co. v. Buzis,* 213 Ill. 341; *Jacksonville & St. L. Ry. Co. v. Wilhite,* 209 Ill. 84; *Metropolitan Nat. Bank v. Merchants' Nat. Bank,* 182 Ill. 367. In *Razor v. Razor,* 142 Ill. 375, the rule is declared to be that a general objection to the giving or refusal of instructions, without pointing out any specific error, will not be considered on appeal. It is not the duty of a court of review to search out errors in the record, upon which to base its judgment. There is nothing for us to consider in this regard.

It is also urged that the court erred in giving to the jury the fifth paragraph of the charge. The judgment was entered on May 5, 1934, hence the trial and appellate procedure is governed by the Civil Practice Act, section 67 of which provides that a copy of the court's charge shall be given to each party prior to the arguments to the jury, and each party may make objection to the same, or any part thereof, which objections shall be specific, and if not made before the jury retires from the bar, shall be deemed to have been waived. The abstract does not disclose that appellant objected to any portion of the charge as given, hence any objections it might have made thereto are waived, and cannot be raised, for the first time, on appeal.

We have considered the record with care, and are constrained to hold that no sufficient reason is shown why the judgment should be reversed. It will accordingly be affirmed.

*Affirmed.*