## POLLOCK PAPER & BOX COMPANY V. EAST TEXAS MOTOR FREIGHT LINES, INCORPORATED.

No. A-1117. Decided April 9, 1947.
Rehearing overruled May 14, 1947.
(201 S. W., 2d Series, 228.)

*Ungerman, Hill & Ungermann* and *Wm. Madden Hill,* all of Dallas, for petitioner.

It was error for the Court of Civil Appeals to hold that there was no proof that the East Texas Motor Freight Lines derived profits or benefits from the alleged Ultra Vires transaction and

that the record did not disclose any business connection between said company and the Great Lakes corporation, and that the transaction in question was ultra vires because the credit of the East Texas company was extended for the purchase of merchandise for the use and benefit of. another in violation of Article 1348 and 1349 Vernon's Civil Statutes. W. L. Moody & Co. v. Rowland, 100 Texas 363, 99 S. W. 1112; Prizky v. Olinger, 177 S. W. (2d) 995; 33 Texas Jur., sec. 771.

*Callaway'& Reed* and *O. D. Montgomery,* all of Dallas, for respondent.

Inasmuch as petitioner's own pleading and proof show that the transaction in question was ultra vires and beyond the powers of the corporation to make, it was not incumbent on respondent to plead and prove the same facts in order to raise the issue of ultra vires. Brand v. Eastland County Lbr. Co., 77 S. W. (2d) 600; Northside Ry. Co. v. Worthington, 88 Texas 562, 30 S. W. 1055, 53 Am. St. Rep. 778; 10 Tex. Jur. 654.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This is a suit for debt on a verified account brought by the petitioner, Pollock Paper & Box Company, against the respondent, East Texas Motor Freight Lines, Inc., for the printing of waybills under a written purchase order number 9411 dated March 6, 1944, made out on the printed form of the respondent and signed "East Texas Motor Freight Lines" by G. H. Jones, its agent. The order was addressed to petitioner and specified: "In accordance with instructions hereon, please enter our order for the following: 200 M Way Bills fan Fold for Great' Lakes, unit price 7.22 M To be No. consecutively beginning where 25000 order quits off."

The respondent's answer contained certain special exceptions, a verified denial of the account, and a plea of non est factum of the written purchase order. There was no plea in the trial court of ultra vires or illegality.

In a trial before the court petitioner recovered judgment for $1,344.18. The court of civil appeals found that the contract was ultra vires as a matter of law, and upon original hearing rendered judgment for respondent. On motion for rehearing, however, the cause was remanded to give petitioner an opportunity to offer additional proof upon another trial. 197 S. W. (2d) 883.

In determining the issue of ultra vires the court of civil appeals proceeded upon the theory that the illegality of the transaction appeared from the allegations of the petitioner and from the evidence, and thus the burden was cast upon petitioner to show that the respondent corporation either dereived profits or contemplated some benefit from the alleged ultra vires transaction, which burden, it is claimed, petitioner failed to discharge.

The petitioner alleged that the respondent, through Jones, its purchasing agent, on March 6, 1944, executed and delivered its written purchase order No. 9411 on its printed form in which respondent ordered petitioner to furnish the 200000 waybills for Great Lakes at $7.22 per thousand, and to be numbered consecutively beginning where a previous order of 25,000 waybills from respondent ended; that upon receipt of the purchase order by petitioner it was accepted, and on March 7, 1944, a written acknowledgment thereof was addressed to the East Texas Motor Freight Lines at Dallas, Texas; that there was an established custom in the printing trade that the purchaser will accept what is commonly termed an over-run or under-run of such printed matter of ten to fifteen per cen of the total number of printed items requested in the order; that by reason of the order and the usage and custom petitioner did furnish and ship 220800 Waybills to Great Lakes and Texas Motor Transport at Cleveland, Ohio, at a total cost of $1,594.18; that $250.00 had been paid on such account, leaving a balance due in the sum of $1,344.18; that G. H. Jones was the duly authorized purchasing agent of the East Texas Motor Freight Lines; that he had been such purchasing agent for twenty-two years, and during all such period had been actively in charge of the purchasing department and charged with the power and authority to buy parts, office supplies and printed matter for such company; and if in truth and in fact he was not actually acting within such authority as agent, that he was clothed with apparent and ostensible authority to enter into such transactions and that respondent was estopped to assert that he was not acting within the scope of his authority.

The trial court filed findings of fact which are amply supported by the evidence. The material portions of such findings are as follows: That sometime in 1943 the respondent acquired ICC Permit No. 20914 from a Mrs. Crawford, which extended into Ohio, Indiana, Michigan, Oklahoma, and other states, operating into Cleveland, Fort Wayne, Detroit, Indianapolis, and other cities, and that respondent maintained an office in Chi-

cago; that G. H. Jones was the duly authorized purchasing agent of the respondent for the purchase of parts, office supplies, and printed matter such as the waybills involved in this case, and had been purchasing such supplies from the petitioner, the Pollock Paper & Box Company, constantly and in regular course of business; that on January 6, 1944, Jones called petitioner's office and requested a sales representative to be sent to respondent's office: that Jones executed purchase order number 8663, being the same purchase order form as the subsequent order number 9411, for 25,000 waybills to be printed under the name of Great Lakes; that Jones advised petitioner's agent that respondent had commenced operations under the name of Great Lakes and Texas Motor Transport for which it desired the waybills set out in the order, which operation was under ICC Permit number 20914; that Jones took a freight bill form of the respondent and delivered such form or copy of the desired waybills, changing the name East Texas Motor Freight Lines to Great Lakes and Texas Motor Transport, and the territory covered to northern and midwestern states, which order was acknowledged in writing by petitioner and charged to the account of respondent; that on March 6, 1944, Jones executed and delivered to petitioner's representative respondent's printed form purchase order number 9411 which was headed East Texas Motor Freight Lines requesting petitioner to enter "our order" for the additional waybills to be numbered consecutively beginning where previous order of 25000 quits off, and having the printed name East Texas Motor Freight Lines as purchaser, by G. H. Jones; that on March 7, 1944, petitioner sent a written acknowledgment of such order to respondent which asknowledgment receipt of "your order" for the 200 M. waybills to be shipped to Great Lakes & Texas Motor Transport, Cleveland, Ohio; that such acknowledged receipt was received in due course of mail by respondent; that petitioner charged such account in the sum of $1.594.18 to respondent and sent invoice therefor, dated July 1, 1944, showing that the waybills had been sold to respondent in accordance with its order; that such invoice was duly received by respondent and that respondent's agent Jones approved the same by writing "OK.J." thereon and that Jones transmitted the same to the accounting department of respondent; that on July 28, 1944, petitioner also sent respondent a bill showing a balance of $1,594.18; that about August 15, 1944, respondent issued its check payable to petitioner for the amount of the bill which check was later voided by tearing the signatures from it; that respondent's agent Jones returned the invoice and statement and requested petitioner to send the statement to Great Lakes and

Texas Motor Transport; and that petitioner complied with such request and received a payment of $250.00 from Great Lakes, leaving a balance due in the sum of $1,344.48.

From the above findings the trial court concluded that G. H. Jones, as purchasing agent of the respondent, was authorized to purchase the supplies in question, such authority having been expressly conferred upon him by respondent, and at all events, to be implied as incidental to such express authority granted, being within the usual and ordinary scope of his authority; that the authority vested in Jones was such that a reasonably prudent person would believe that authority to purchase was vested in him, and respondent having put it in the power of Jones to make contracts and perform acts apparently within his authority upon which petitioner, an innocent third person, relied, the lose, if any, should be imposed upon the respondent; that the authority of Jones to make the purchase was expressly vested or might be reasonably inferred from the power conferred upon him to buy supplies of the character actually purchased; that it likewise might be reasonably concluded that the respondent received or anticipated receiving benefits arising from the operation of the ICC Permit number 20914 under the name of Great Lakes and Texas Motor Transport, and the securing of waybills was reasonably necessary or proper for such operation; and that therefore the obligation was that of the respondent for which the petitioner should have judgment in the sum of $1,344.18, the balance due on the account.

The respondent made no request for any findings or conclusions on the question of ultra vires or illegality of the transaction, and none was made thereon. That issue was in no manner raised by the respondent in the trial court, nor did it affirmatively appear from the allegations of the petitioner.

Unless the defense of ultra vires affirmatively appears from the allegations of the plaintiff, it must be specially pleaded in order to be available, and it cannot be urged for the first time upon appeal. Long Bell Lumber Co. v. Hampton, 20 S. W. (2d) 1081; Central Lumber Co. v. Fall, 264 S. W. 513; Wallace Bank & Trust Co. v. First National Bank of Fairfield, 40 Idaho 712, 237 P. 284, 50 A. L. R. 316; Blackwood v. Lansing Chamber of Commerce, 178 Mich. 321, 144 N. W. 823; 19 C. J. S. Sec. 1331; 13 Am. Jur. 786, Sec. 756; Rule 94, Texas Rules of Civil Procedure. Consequently, since the petitioner's pleadings failed to show it, and the respondent did not specially plead it, the de-

fense of ultra vires was not available to respondent. Moreover, it is apparent to us that if the issue had been properly raised, neither the pleadings, the evidence, nor the findings of the trial court show that the transaction was ultra vires or illegal; and under the circumstances, the burden in this respect was upon the respondent and not the petitioner.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

Opinion delivered April 9, 1947.

Rehearing overruled May 14, 1947.